**UNITED STATES of America, Plaintiff,**

v.

**Felix RAMIREZ and wife, Monica Ramirez, and Ernest Ramirez, Trustee, Defendants.**

**No. 5:00–CV–351–C.**

United States District Court, N.D. Texas, Lubbock Division.

March 11, 2002.

E. Scott Frost, U.S. Attorney's Office, Lubbock, TX, for plaintiff.

Deborah J. Penner, Law Office of Deborah J. Penner, Lubbock, TX, for defendant.

### ORDER

CUMMINGS, District Judge.

Came on for trial the above-styled and - numbered cause. Both parties appeared and announced ready.

The Court, having heard the evidence and argument of counsel, makes the following findings of fact:

1. Prior to 1989, the United States of America, acting through its agency the Farmers Home Administration ("FmHA")[1], was the owner and holder of deed of trust liens on certain lands situated in Dickens County, Texas, to-wit:

**TRACT ONE:**

All of the West one-half of the Southwest One-fourth (W/2 of the SW/4) of Survey No. 3, Certificate No. 1075, A.B. & M., Abstract No. 16, Dickens County, Texas, containing 80 acres of land, more or less.

**TRACT TWO:**

92 acres of land, more or less, out of the Southeast part of the I. & G.N. Ry. Co. Survey, Certificate No. 521, Abstract No. 268, in Dickens County, Texas.

**TRACT THREE:**

Being all of the Northwest One-fourth (NW1/4) of Survey No. 2, Certificate No. 322, A.B. & M., Abstract No. 1093, in Dickens County, Texas, containing 160 acres of land, more or less.

**TRACT FOUR:**

All of the Southeast One-fourth (SE1/4) of Survey No. 255, Certificate No. 6/958, H. & G.N. Ry. Co., Abstract No. 54, Dickens County, Texas, containing 160 acres of land, more or less.

---

1. Pursuant to Sec. 226 of the Federal Crop Insurance Reform and Department of Agriculture Reorganization Act of 1994 (the "Act"), Pub. Law No. 103–354, 108 Stat. 3178 (October 13, 1994) (7 U.S.C. § 6932), the Secretary of Agriculture created a new agency, the Consolidated Farm Service Agency, to assume the farm-related agricultural credit programs formerly administered by the Farmers Home Administration and abolished the Farmers Home Administration. The name of the new agency was subsequently shortened to Farm Service Agency. 60 F.R. 64297 (December 15, 1995).

*TRACT FIVE:*

All of the Northeast One-fourth (NE1/4) of Survey No. 3, Certificate No. 323, A.B. & M., Abstract No. 8, in Dickens County, Texas, containing 158 acres of land, more or less.

*TRACT SIX:*

All of the North One-half (N1/2) of Survey No. 19, Block O, G.M. Greear, Abstract No. 891, Dickens County, Texas, Patent No. 101, Volume 26, of November 8, 1983, containing 80 acres of land, more or less.

*TRACT SEVEN:*

Being all of Subdivision No. 7, of League No. 3, Blanco County School Land, Abstract No. 311, in Dickens County, Texas, containing 155.8 acres of land, more or less.

2. The liens of the United States arose out of several deeds of trust executed by Felix Ramirez and wife, Monica Ramirez, of Route 1, Box 32, Afton 79220, County of Dickens, State of Texas filed and recorded in the County Clerk's office of Dickens County, State of Texas and more particularly described as follows:

| Lien Instrument | Mortgagee | Date of Instrument | Date Filed | Volume Number | Page No. |
|---|---|---|---|---|---|
| Deed of Trust | U.S. of A. | 8/12/80 | 8/12/80 | 50 | 299 |
| Deed of Trust | U.S. of A. | 8/7/81 | 8/7/81 | 50 | 889 |
| Deed of Trust | U.S. of A. | 5/19/82 | 5/19/82 | 51 | 308 |
| Deed of Trust | U.S. of A. | 7/6/83 | 7/6/83 | 52 | 124 |

3. On or about October 21, 1987, defendants Felix Ramirez and wife, Monica Ramirez, filed a Chapter 11 bankruptcy case in Case No. 87–50713–11 in the United States Bankruptcy Court for the Northern District of Texas, Lubbock Division.

4. On July 13, 1988, the Third Amended Plan of Reorganization was confirmed.

5. Under the terms of the confirmed plan, the United States of America's lien on seven tracts of land was determined to be valueless and those liens were to be released. The plan provided under Class 7b on page 9 as follows:

7b—Certain second and third lien positions are of no value due to the extent of prior liens. Those liens will be released by Farmers Home Administration on the Offield tracts of 172 acres, the Robertson tract of 160 acres, Bigham (Anbico) tract of 160 acres, and on all three Haney–Barton tracts

6. In furtherance of the provisions of the confirmed plan in Case No. 87–50713–11 and specifically with regard to the provisions dealing with Class 7b, a Partial Release was drafted by counsel for the FmHA.

7. The Partial Release was signed by an FmHA official and submitted to the defendants' attorney in the bankruptcy case.

8. The Partial Release was recorded in Volume 19, Page 859, Release Records, Dickens County, Texas. The Partial Release released the United States of America's liens on these seven tracts of land situated in Dickens County, Texas.

8a. Under the terms of the Chapter 11 plan which was confirmed in 1988, the United States of America's lien on seven tracts of land was determined to be value-

less and those liens were to be released. In addition, the defendants were to pay the FmHA the value of several other tracts of land over time, to-wit:

$ 41,000.00-Homestead Tract
$  8,595.00-Huckabay Tract
$ 27,750.00-Dunlap Tracts
$485,400.00-Jackson, Havins and Sheridan Tracts

Defendants Felix and Monica Ramirez executed promissory notes evidencing these obligations under the confirmed plan.

8b. The total unpaid balance of the debt under the terms of the confirmed Chapter 11 plan (including all advances) is $2,124,332.20 as of August 31, 2001, with interest accruing thereafter at the daily rate of $228.7751. This total debt can be broken down as follows:

Unpaid principal -$ 592,355.47
Accrued interest -$1,203,318.39 (interest accrued on the unpaid principal)
Unpaid advances -$ 308,852.11 (includes advances made to pay delinquent taxes and to pay the prior lienholder)
Accrued interest -$ 19,806.23 (interest accrued on the unpaid advances)

Defendants Felix and Monica Ramirez defaulted in making *any* payments to the FmHA under the terms of the confirmed Chapter 11 plan. Since the Chapter 11 plan was confirmed in 1988, they have *not* made *any* voluntary payments to the FmHA. However, involuntary collections have been made by way of offset or foreclosure sales and these collections have been credited to the notes.

8c. Defendants Felix and Monica Ramirez also failed to pay delinquent ad valorem taxes on the land, which is a violation of the terms of the deeds of trust with the FmHA The FmHA expended thousands of dollars to pay these taxes.

9. On August 13, 1992, the bankruptcy case filed by defendants Felix and Monica Ramirez, Case No. 87–50713–11, was dismissed by an order of the United States Bankruptcy Court for the Northern District of Texas. The order of dismissal was unqualified.

10. On or about May 30, 1996, defendants Felix and Monica Ramirez filed a Chapter 11 bankruptcy case in Case No. 96–50589 in the United States Bankruptcy Court for the Northern District of Texas, Lubbock Division. This case was dismissed on September 25, 1998. No plan was ever confirmed.

11. On or about October 27, 1999, defendants Felix and Monica Ramirez filed a Chapter 11 bankruptcy case in Case No. 599–51195 in the United States Bankruptcy Court for the Northern District of Texas, Lubbock Division. This case was dismissed on November 22, 1999. No plan was ever confirmed. However, the stay was lifted on October 29, 1999, to allow the scheduled foreclosure sale to proceed.

12. On or about August 2, 2000, defendants Felix and Monica Ramirez executed warranty deeds which purported to convey four (4) of the tracts identified in ¶ 1 above (specifically Tracts 3, 5, 6 and 7) to defendant Ernest Ramirez, Trustee.

13. Ernest Ramirez is the son of defendants Felix and Monica Ramirez.

14. A Notice of Cancellation of Partial Release and Reinstatement of Liens dated May 26, 1998 was filed for record on June 5, 1998, and is recorded in Volume 214, Page 22, Official Public Records, Dickens County, Texas.

15. On or about April 12, 1979, defendants Felix Ramirez and wife, Monica Ramirez, executed a deed of trust to Tom Hamilton, Trustee for the benefit of Gordon B. Jackson, Annie Mae Jackson, John F. Jackson, Mary Rogers, Marjorie Jackson Davis, and Ethel Jackson Sheridan. This deed of trust secures the payment of a note dated April 12, 1979, in the original principal sum of $536,300.00. This deed of trust is recorded in Volume 49, Page 706, Deed of Trust Records, Dickens County, Texas. This deed of trust covered several

tracts of land including the Fifth Tract, which is described as follows:

The Southeast Quarter of Survey 2, A.C.H. & B., Original Grantee, Dickens County, Texas, consisting of 160 acres of land.

16. On or about April 20, 1984, the $536,300.00 note and the April 12, 1979 deed of trust were transferred and assigned to the United States of America. The Transfer of Lien is recorded in Volume 171, Page 804, Deed Records, Dickens County, Texas. On the Transfer of Lien document, the Fifth Tract is described as follows:

The Northeast Quarter of Survey 2, A.C.H. & B., Original Grantee, Dickens County, Texas, consisting of 160 acres of land.

17. On September 23, 1983, defendants Felix Ramirez and Monica Ramirez executed a deed of trust to Tom Hamilton, Trustee, for the benefit of Gordon Jackson, Annie Mae Jackson, John F. Jackson, Mary Rogers, Marjorie Jackson Davis, and Ethel Jackson Sheridan This deed of trust secures the payment of the April 12, 1979 note in the amount of $536,300.00 This deed of trust is recorded in Volume 52, Page 241, Deed of Trust Records, Dickens County, Texas. This deed of trust covers only one tract of land, to-wit:

The Northeast Quarter of Survey 2, A.C.H. & B., Original Grantee, Dickens County, Texas, consisting of 160 acres of land.

Based upon the above findings, the Court makes the following conclusions of law:

1. The effect of a dismissal of a bankruptcy case is addressed in 11 U.S.C. § 349 which provides, in part, as follows:

(b) Unless the court, for cause, orders otherwise, a dismissal of a case other than under section 742 of this title—

(1) reinstates—

(A) any proceeding or custodianship superseded under section 543 of this title;

(B) any transfer avoided under section 522, 544, 545, 547, 548, 549 or 724(a) of this title, or preserved under section 510(c)(2), 522(i)(2), or 551 of this title; and

(C) any lien avoided under section 506(d) of this title.

■ 2. Generally speaking, the dismissal of a bankruptcy case restores all property rights that existed at the time that the bankruptcy case was filed.

3. "The objective of section 349(b) is to restore all property rights, as far as practicable, to the positions they occupied at the commencement of a case that was dismissed under one of the operative sections of Title 11.... To this end section 349(b) specifies that the dismissal of a case reinstates proceedings or custodianships that were superseded by the bankruptcy code, reinstates avoided transfers, reinstates voided liens, vacates any order, judgment or transfer ordered as a result of the avoidance of a transfer, and revests the property of the estate in the entity in which the property was vested at the commencement of the case." Collier on Bankruptcy, vol. 3, ¶ 349.03[1] (15th rev. ed.2001).

4. The legislative history for § 349 provides, in pertinent part, that "the dismissal ... reinstates voided liens" and that "[t]he basic purpose of the subsection [§ 329(b) ] is to undo the bankruptcy case, as far as practicable, and to restore all property rights to the position in which they were found at the commencement of the case" H.R.Rep. No. 595, 95th Cong., 1st Sess. 338 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5963, 6294, *reprinted in* Collier

on Bankruptcy, Appendix, Part 4(d)(i) (15th rev. ed.2001).

5. The Bankruptcy Code specifically allows a Chapter 11 case to be dismissed post-confirmation. See 11 U.S.C. § 1112(b)(8), which provides that a case may be converted or dismissed because of a material default by the debtor with respect to a confirmed plan. Thus, there does not appear to be any impediment under the Code in dismissing a Chapter 11 case post-confirmation.

6. While § 349 prescribes certain effects of dismissal, it also is silent as to others. It does not provide that discharges are undone or revoked and it does not provide that confirmation orders are undone or revoked. For Chapter 11 cases, the revocation of confirmation orders and discharges is governed by 11 U.S.C. §§ 1144 and 727(d).

7. Generally speaking, the dismissal of the debtors' Chapter 11 case did not upset their discharge or their confirmed Chapter 11 plan. Certainly, § 349 does not so provide. In other words, the confirmed Chapter 11 plan survives the dismissal of the Chapter 11 case and continues to bind the creditors and debtor. However, other decisions concerning confirmed Chapter 13 plans have found that a dismissal does operate to vacate a confirmation order or confirmed plan.

8. Given the Fifth Circuit's propensity not to construe statutes beyond the "clear language" contained therein, it is likely that the Fifth Circuit would generally agree that § 349 does not "undo" the discharge in a Chapter 11 case with a confirmed plan or "undo" the provisions of a confirmed Chapter 11 plan.

9. The FmHA liens at issue were found to be valueless in the confirmed plan and were, in effect, "voided" under § 506(d). This finding and the effect of § 506(d) triggered the plan requirement that the liens be released.[2]

10. Although § 349 does not operate to reinstate the released liens, the United States has the right to avoid the effect of the confirmed plan by rescinding it. The confirmed Chapter 11 plan constituted a binding contract between the defendants, Felix Ramirez and Monica Ramirez, and the United States. The United States has a right to pursue appropriate remedies following defendants' breach of this contract.[3]

11. Under general contract law, repudiation of a contract arises when one party to the contract refuses to perform his obligation under the contract. Repudiation of a contract by one party gives rise to a right of rescission by the other party. Furthermore, the unilateral rescission of a contract is permitted if there is a breach in a material part or if the breach goes to the essence of the contract.

12. In this case, the FmHA had a claim against the defendants in the amount of $1,200,000. Defendants agreed to pay the FmHA a part of this claim by paying for the value of certain tracts of land totaling $562,745.00. Defendants repudiated the "contract" by failing to make *any* of the payments required under the plan. The payments required were significant. Defendants also repudiated the "contract" by failing to pay the ad valorem taxes on the

---

**2.** The release was merely a means of documenting or recording the statutory avoidance action under § 506(d).

**3.** Defendants breached the terms of the confirmed Chapter 11 plan in that they failed to make *any* payments to the FmHA as provided in that plan.

land[4] This failure required the FmHA to make advances to pay the taxes. In short, Defendants had the *free* use and ownership of the land since 1988 (a full 12 years before this lawsuit was filed) and they paid not one red cent to the FmHA during that 12–year period. They also failed to pay the ad valorem taxes on this land. Defendants effectively repudiated their agreement contained in the confirmed Chapter 11 plan.

13. Besides repudiating the contract, defendants breached their contract with FmHA and their breach was material and went to the essence of the contract. Defendants' primary contractual obligation owed to the FmHA was the payment of money and they failed to satisfy this obligation. Defendants took all the benefits of the contract (i.e., the use of the land) but paid none of the obligations. Therefore, the United States had a right to rescind the "contract" consisting of the terms of the confirmed Chapter 11 plan.

14. The objective of an equitable suit for rescission or cancellation is to restore the status quo. The Fifth Circuit has explained the rescission remedy as requiring the parties to "unmake" the contract. The United States is entitled to rescission or cancellation of the 1989 Partial Release and the reinstatement of its liens as they existed prior to the filing of the 1987 bankruptcy case.

■ 15. In 1984, the United States acquired a $536,300 note and the 1979 deed of trust securing its payment. The Transfer of Lien document specifically identified the note and the 1979 deed of trust and also specifically identified five tracts of land covered by the deed of trust. The

United States later learned that the 1979 deed of trust incorrectly described the Fifth Tract on the deed of trust. The description should have been the *Northeast Quarter* of Survey 2, A.C.H. & B., Original Grantee, Dickens County, rather than the Southeast Quarter. This error is obvious for several reasons.

First, the fact that the First Tract on the 1979 deed of trust already included the *Southeast Quarter* is evidence that the Fifth Tract was incorrectly described.

Second, the Transfer of Lien document contained the correct description of the Fifth Tract. This evidences the transferors' intent to transfer the lien on *this* tract of land, i.e., *the Northeast Quarter*, to the United States. In addition, the Transfer of Lien document indicates the original lienholders' intent to have (or take) a lien on *this tract* in their 1979 deed of trust (which was described in the Transfer of Lien document) so that the lien could be transferred to the United States.

Third, the 1983 deed of trust shows the intent of the defendants, Felix and Monica Ramirez, to grant a lien to the *Northeast Quarter*, to secure the payment of the 1979 note in the amount of $536,300.00. While the 1983 deed of trust contains no language that it corrects the earlier 1979 deed of trust, this deed of trust nevertheless acts to correct the earlier error in the description of the Fifth Tract which appeared in the 1979 deed of trust. The 1983 deed of trust only describes one tract and that tract is the *Northeast Quarter*.

Fourth, the $536,300 note which is secured by both the 1979 and 1983 deeds of trust was transferred to the United States

---

4. The dismissal of the 1987 bankruptcy case was procured by Dickens County and Patton Springs Independent School District because of defendants' failure to comply with the plan. Claims for ad valorem taxes were addressed in the plan as "priority" claims valued at $53,327.00. The deeds of trust between the defendants and the FmHA required that defendants pay the ad valorem taxes.

in 1984. The Transfer of Lien document, however, did not expressly transfer the 1983 deed of trust lien. Nevertheless, the Transfer of Lien document transfers the $536,300 note "together with *all liens,* and any superior title, held by the undersigned securing the payment thereof."

The Fifth Tract in that deed of trust is mis-described and should be corrected to read "the *Northeast Quarter* of Survey 2, A.C.H. & B, Original Grantee, Dickens County," rather than the Southeast Quarter.

■ 16. The equitable remedy of reformation is available when a written contract or conveyance fails to express the agreement of the parties, due to fraud, misrepresentation or mistake.

■ 17. This form of relief is consistent with long-standing tenets of contract law. A court may reform a contract only "to make a writing express the bargain which the parties desired to put into writing." 13 S. Williston, Williston on Contracts, Section 1549, at 132 (3d ed.1970).

18. In this case, the defendants Felix and Monica Ramirez purchased five tracts of land from Gordon B. Jackson, et al. in 1979. The defendants gave Gordon B. Jackson, et al. a note in the amount of $536,300 as part of the purchase price of the land. The payment of this note was secured by a vendor's lien and was additionally secured by the 1983 deed of trust. This deed of trust specifically recited that the note therein described was a part of the purchase price of the land and that the note was additionally secured by a vendor's lien.

19. The description of the Fifth Tract on the deed and the Fifth Tract on the 1979 deed of trust are not the same. The deed describes the Fifth Tract as the *Northeast Quarter* of Survey 2, A.C.H. & B., Original Grantee, Dickens County, but

the deed of trust describes the Fifth Tract as the *Southeast Quarter.*

20. After this sale transaction was completed, defendants Felix and Monica Ramirez gave Gordon B. Jackson, et al. a new deed of trust in 1983 describing only the *Northeast Quarter* to secure the payment of the $536,300 note. Then in 1984, Gordon B. Jackson, et al. transferred the $536,300 note and the liens securing its payment to the United States. In that Transfer of Lien instrument, the Fifth Tract was described as the *Northeast Quarter.* Obviously, the description of the Fifth Tract on the 1979 deed of trust (as the Southeast Quarter) was in error since the tract described there was already described as a part of the First Tract on that deed of trust. Moreover, defendants Felix and Monica Ramirez apparently intended to give Gordon B. Jackson, et al. a deed of trust lien on the *Northeast Quarter* to secure the payment of the $536,300 note since they granted such a lien to Gordon B. Jackson, et al. in 1983.

21. The description of the Fifth Tract on the 1979 deed of trust is in variance with the lien instruments given by defendants to secure the payment of the $536,300 vendor's lien note (i.e., the 1983 deed of trust) and the instrument transferring the 1979 lien to the United States. The description of the Fifth Tract on the 1979 deed of trust should be reformed to describe the Fifth Tract as the Northeast Quarter of Survey 2, A.C.H. & B., Original Grantee, Dickens County, Texas.

■ 22. Defendants assert that the United States' claim to rescind (or cancel) the 1989 Partial Release and to reform the 1979 deed of trust is barred by limitations. They cite § 16.051 of the Texas Civil Practice and Remedies Code as providing the applicable limitation period. The long-settled rule is that the United

States is not subject to local statutes of limitations in enforcing its rights unless it has consented to the application of those statutes. The Court of Appeals for the Fifth Circuit has concluded that state limitation statutes are "simply irrelevant" to cases where the United States is asserting its rights.

23. Here defendants have not shown that Congress has consented to the application of state statutes to claims asserted by the United States. As a result, the Texas limitation statutes are "simply irrelevant" to this case.

24. The general rule *nullum tempus occurrit regi*—time does not run against the sovereign—is well settled in the law. It is equally well established that the United States is not subject to any statute of limitations except where one is explicitly imposed by Congress.

25. Furthermore, " '[s]tatutes of limitation sought to be applied to bar rights of the Government, must receive a strict construction in favor of the Government.' " *Badaracco v. Commissioner*, 464 U.S. 386, 391, 104 S.Ct. 756, 78 L.Ed.2d 549 (1984), quoting *E.I. Dupont De Nemours & Co. v. Davis*, 264 U.S. 456, 462, 44 S.Ct. 364, 68 L.Ed. 788 (1924).

26. There is no federal statute imposing a limitation period on the claims asserted in this action, to-wit: rescission (or cancellation) and reformation.

27. Title 28, United States Code, Section 2415 is not applicable to the claims asserted in this lawsuit. Congress enacted 28 U.S.C. § 2415 as a limitation statute applicable to some civil actions initiated by the United States. It, however, is not applicable to all actions brought by the United States. Section 2415 provides, in part, as follows:

(a) Subject to the provisions of section 2416 of this title, and except as other-wise provided by Congress, every action for money damages brought by the United States ... which is founded upon any contract express or implied in law or fact, shall be barred unless the complaint is filed within six years after the right of action accrues ...

\* \* \* \* \* \*

(c) Nothing herein shall be deemed to limit the time for bringing an action to establish the title to, or right of possession of, real or personal property.

28. The instant action is not an action for money damages; rather, it seeks equitable relief in the form of rescission and reformation. As a result, § 2415(a) is simply not applicable. When presented with the question as to whether § 2415(a) applied to the equitable action of foreclosure, the circuit courts have been unanimous in concluding that § 2415(a) is not applicable.

29. Defendant Ernest Ramirez, Trustee, has raised laches as a defense to the claim asserted by the United States in this action seeking to rescind the Partial Release and reinstate the liens. "It is well settled that the United States is not bound by state statutes of limitation or subject to the defense of laches in enforcing its rights." *United States v. Summerlin*, 310 U.S. 414 at 416, 60 S.Ct. 1019, 84 L.Ed. 1283 (1940).

Judgment shall be entered for the Plaintiff, UNITED STATES OF AMERICA, in accordance with the above findings of fact and conclusions of law. Defendants shall bear all costs of court.

IT IS SO ORDERED.