**In re KEVCO, INC. et al., Debtor.**

**Pam Capital Funding, L.P., ML CBO IV (Cayman), Ltd., Highland Legacy Ltd., Pamco Cayman Limited, and Prospect Street High Income Portfolio, Inc., Plaintiffs,**

**v.**

**New NGC, Inc., BBC Distribution, LLC., Daniel R. Hardin, Dale Ledbetter, and Banks Corporation, Defendants.**

**Bankruptcy No. 01–40783–BJH–11.**
**Adversary No. 03–4181–BJH.**

United States Bankruptcy Court,
N.D. Texas,
Fort Worth Division.

March 15, 2004.

Kim M. Carpenter, Gardere, Wynne, Sewell LLP, Dallas, TX, Michael P. Cooley, Gardere, Wynne & Sewell, Dallas, TX, R. Steven DeGeorge, Robinson, Bradshaw & Hinson, Charlotte, NC, Joanne Earley, Gardere Wynne Sewell, LLP, Dallas, TX, Paul J. Peralta, Baker & Daniels, South Bend, IN, for Defendants.

Jamie R. Welton, Lackey Hershman L.L.P., Dallas, TX, for Plaintiffs.

## MEMORANDUM OPINION

BARBARA J. HOUSER, Bankruptcy Judge.

Before the Court is the plaintiffs' motion asking the Court to either remand, or abstain from hearing, this adversary proceeding (the "Motion"). The plaintiffs are Pam Capital Funding, L.P.; ML CBO IV (Cayman), Ltd.; Highland Legacy Ltd.; PamCo Cayman Limited; and Prospect Street High Income Portfolio, Inc. (collectively, "Plaintiffs"). The Plaintiffs are holders of bonds issued by Kevco, Inc. ("Kevco" or "Debtor").

The defendants are New NGC, Inc. ("New NGC"), the largest supplier for the Debtor's distribution group; Dan R. Hardin ("Hardin"), President of the Debtor's distribution group from July, 1999 to February, 2001; Dale Ledbetter ("Ledbetter"), an employee of the Debtor's distribution group during the same time period; Banks Corporation ("Banks"), an entity which had discussed the possible acquisition of a portion of the Debtor's business; and BBC Distribution, L.L.C. ("BBC"), the corporation formed by Hardin and Ledbetter after they left the Debtor's employ (New NGC, Hardin, Ledbetter, Banks, and BBC are collectively referred to as the "Defendants"). The procedural background of this adversary proceeding is complex and is set forth below to the extent necessary to an understanding of the Motion.

### Procedural Background

On January 16, 2002, the Plaintiffs filed suit against essentially these same defendants in the 193rd Judicial District Court in Dallas County, Texas ("Pam Capital I").[1] The Plaintiffs alleged in Pam Capital

---

1. Pam Capital I was originally filed against National Gypsum Co., predecessor to New

I that Hardin and Ledbetter began discussions with New NGC's predecessor in interest while still employed by the Debtor about the formation of a company to compete with the Debtor. The Plaintiffs further alleged that: (i) the Defendants planned to move the key officers, suppliers, and customers of the Debtor into this competing company which would become the depository for everything of value, while leaving the debt owed to the Plaintiffs behind; (ii) on January 19, 2001, Ledbetter left the Debtor's employ; Hardin left a week later; and National Gypsum and other suppliers and customers followed Ledbetter and Hardin to their new corporation, BBC; (iii) less than two weeks later, on February 5, 2001, the Debtor filed its voluntary petition for relief under the Bankruptcy Code, thereby commencing this Chapter 11 case (the "Case"); and (iv) the Defendants knew or should have known that their actions would leave the Debtor unable to pay its debts to the Plaintiffs. The petition in Pam Capital I pled claims for tortious interference with contract and conspiracy to commit tortious interference, and alleged damages of in excess of $40 million. In short, the theory underlying Pam Capital I was that the Defendants tortiously interfered with the Plaintiffs' debt contracts with the Debtor.

On February 15, 2002, Defendants Hardin, Ledbetter and BBC removed Pam Capital I[2] to this Court, alleging that jurisdiction under 28 U.S.C. § 1334 existed because "Plaintiffs ... purport to assert a claim that belongs to the Debtor." *See* Notice of Removal (the "Notice"), ¶ 4. The Notice also alleged that the removed action was a core proceeding because "[t]his court has exclusive jurisdiction to determine what constitutes the property of the estate." *See* Notice, ¶ 5.

The Plaintiffs then asked this Court to remand or abstain with respect to Pam Capital I, contending that the Notice was fatally defective because this Court lacked subject matter jurisdiction over the claims asserted; or, in the event that this Court found it had jurisdiction, it should either abstain or remand the action on equitable grounds. Both the Defendants and the Official Committee of Unsecured Creditors appointed in the Case (the "Committee") opposed remand or abstention.

On June 25, 2002, this Court entered a Memorandum Opinion and separate Order denying the motion to remand or abstain, finding that the Notice: (i) contained an adequate short and plain statement of the facts justifying removal, and (ii) sufficiently identified the claims alleged to be property of the estate. The Court rejected the Plaintiffs' contention that the Notice ran afoul of the well-pleaded complaint rule. *See* Ct.'s Mem. Op. 6/25/02, p. 5, n. 4.[3] The

---

NGC, Inc., Hardin, Ledbetter and BBC. Banks Corporation intervened in Pam Capital I while it was on appeal.

2. Upon removal, Pam Capital I was assigned Adv. Pro. No. 02–4024–BJH.

3. Plaintiffs argued that under the well-pleaded complaint rule, facts in support of jurisdiction must appear on the face of the Notice, and that Defendants' argument that the claims asserted in the petition are property of the estate is, in effect, a standing argument, and that standing is an affirmative defense. Citing *FoxMeyer Health Corp. v. McKesson*

*Corp. (In re FoxMeyer Corp.)*, 230 B.R. 791 (Bankr.N.D.Tex.1998), the Plaintiffs argued that an affirmative defense does not give rise to federal jurisdiction sufficient to support removal. This Court ruled that the assertion that a particular claim is property of the estate, while certainly implicating standing, is much broader and more substantive. This Court distinguished *FoxMeyer* on the ground that the *FoxMeyer* court expressly declined to decide whether the claims raised in the complaint at issue there were property of the estate. *FoxMeyer*, at 796 ("The Delaware court will decide whether the claims asserted by Avatex are property of the FoxMeyer es-

Court concluded that it had subject matter jurisdiction over the claims asserted in Pam Capital I because those claims were property of the estate. Thus, neither remand nor abstention was appropriate. The Plaintiffs appealed that decision.[4]

In February, 2003, while the appeal was pending before the District Court, the Plaintiffs filed a Motion for Leave to Amend Pleadings in the District Court (the "District Court Motion") seeking leave to amend the complaint in Pam Capital I to assert additional claims against the Defendants, including claims for fraud, conspiracy to commit fraud, aiding and abetting fraud, and negligent misrepresentation (collectively, the "Fraud Based Claims"). On March 13, 2003, the Plaintiffs also filed a petition in the 162nd Judicial District Court of Dallas County (the "State Court") against the Defendants (the "State Court Action") asserting the Fraud Based Claims they sought leave to amend to include in the District Court Motion.[5] On March 20, 2003, while the District Court Motion was pending, the Plaintiffs also filed an identical motion in this Court styled as a Motion to Seek Relief from Judgment and Motion for Leave to Amend Pleadings (the "Motion for Leave to Amend"), pursuant to which the Plaintiffs sought this Court's permission to amend the complaint in Pam Capital I to assert the Fraud Based Claims.[6] After a hearing, this Court ruled that the Motion for Leave to Amend would be carried pending either: (i) a decision by the District Court on Plaintiffs' appeal of the June 25, 2002 Memorandum Opinion and separate Order, or (ii) a ruling on the District Court Motion.

On September 29, 2003, the District Court entered an Order denying the District Court Motion on several grounds. First, the District Court found that the Plaintiffs had unduly delayed pursuing the Fraud Based Claims, which arose from alleged representations made to them by Hardin in October 2000, the falsity of which should have become apparent upon the Debtor's bankruptcy filing. In addition, the District Court concluded that pursuit of the Fraud Based Claims would be futile, since the alleged representations by Hardin were not statements of material fact, but instead his opinion and prediction of the Debtor's future success. The District Court further concluded that to the extent the Fraud Based Claims were based upon an alleged failure to disclose, the proposed amended complaint failed to allege facts supporting a duty to disclose. Finally, the District Court concluded that the negligent misrepresentation claim was barred by limitations, rejecting the Plaintiffs' argument that they did not discover the wrongdoing until much later and that the statute of limitations had not yet run under the "discovery rule." Moreover, on

---

tates. This court has accordingly deferred that issue to the Delaware court").

4. On September 30, 2003, the District Court affirmed this Court's Memorandum Opinion and separate order. Plaintiffs filed a Notice of Appeal to the Fifth Circuit on October 21, 2003.

5. The Defendants then removed the State Court Action to this Court ("Pam Capital II") where it was assigned the above adversary number. Thereafter, the Plaintiffs filed the Motion.

6. In the Motion for Leave to Amend, the Plaintiffs alleged that the Defendants' opposition to the District Court Motion was premised, in part, on the Plaintiffs' failure to obtain relief from this Court's judgment pursuant to Fed.R.Civ.P. 60. Therefore, to "remove any possible obstacles to permitting amendment," the Plaintiffs sought relief from the judgment in this Court so that they could amend the complaint in Pam Capital I to add the Fraud Based Claims.

September 30, 2003, the District Court affirmed this Court's June 25, 2002 Memorandum Opinion and separate Order.

After the District Court's rulings in Pam Capital I, this Court held a status conference with the parties to determine the status of the matters pending before this Court; specifically, how the parties wished to proceed with respect to the Motion for Leave to Amend in Pam Capital I and the Motion (to remand or abstain) in Pam Capital II. At that status conference, the Court determined that the Motion for Leave to Amend in Pam Capital I was moot due to the District Court's ruling on the District Court Motion, but that it would hear argument on the Motion in Pam Capital II, which occurred on November 24, 2003.

**Legal Analysis**

 Removal of a civil action to the bankruptcy court is governed by 28 U.S.C. § 1452 which provides:

A party may remove any claim or cause of action in a civil action other than a proceeding before the United States Tax Court or a civil action by a governmental unit to enforce such governmental units' police or regulatory power, to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title.

28 U.S.C. § 1452(a). Generally, removal statutes must be strictly construed because removal jurisdiction "implicates important federalism concerns." *Watts v. Tex. Workforce Comm'n*, 1999 WL 812795 (N.D.Tex.1999) (citing *Frank v. Bear Stearns & Co.*, 128 F.3d 919, 922 (5th Cir.1997)). Furthermore, "any doubts concerning removal must be resolved against removal and in favor of remanding the case back to state court." *Id.* (quoting *Cross v. Bankers Multiple Line Ins. Co.*,

810 F.Supp. 748, 750 (N.D.Tex.1992)). The Defendants, as the removing parties, bear the burden of establishing federal jurisdiction under § 1334. *See Frank*, 128 F.3d at 921–22; *Faulk v. Owens–Corning Fiberglass Corp.*, 48 F.Supp.2d 653 (E.D.Tex.1999).

Thus, the first question this Court must address is whether it has jurisdiction over the claims asserted in Pam Capital II under § 1334 which provides in relevant part:

(a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.

(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or related to a case under title 11.

\* \* \* \* \* \*

(e) The district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction of all of the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate.

28 U.S.C. § 1334.

The Plaintiffs contend that this Court must grant the Motion and remand Pam Capital II to the State Court because the Court lacks subject matter jurisdiction over the claims asserted. Specifically, the Plaintiffs contend that because of the timing of the filing of the State Court Action (after confirmation of the Debtor's first amended plan of liquidation (the "Plan") on November 24, 2002), the bankruptcy

estate ceased to exist, as did this Court's "related to" jurisdiction under § 1334(b).[7]

In response, the Defendants[8] look to Article 15.1 of the Plan, which provides for retention of jurisdiction by this Court as follows:

15.1 Retention of Jurisdiction. The Bankruptcy Court, even after the case has been closed, shall have jurisdiction over all matters arising under, arising in, or relating to the Debtor's chapter 11 case, including proceedings to:

&ast; &ast; &ast; &ast; &ast; &ast;

(f) hear, determine, and adjudicate any litigation involving the Avoidance Actions or other claims or causes of action constituting Estate Property;

(g) decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving the Debtor that may be pending on or commenced after the Effective Date; ...[9]

The Defendants further note that the order confirming the Plan provides that this Court "shall retain jurisdiction as is set forth in Article 15" and that it operates as a permanent injunction against actions or acts to obtain possession of or exercise control over estate property. Thus, the Defendants contend that under the Plan and the confirmation order, this Court has jurisdiction to determine who owns the claims asserted in Pam Capital II and to enforce its permanent injunction against parties improperly trying to obtain possession of, or exercise control over, estate property. Specifically, the Defendants contend that "[u]nder the Kevco Plan and Confirmation Order, this Court has subject matter jurisdiction to determine who owns the claims and to enforce its permanent injunction against parties improperly trying to obtain possession of or exercise control over Kevco estate Property." *Defs' Joint Resp. in Opp. to Mot. to Remand,* p. 6.

For the reasons explained more fully below, the Court concludes that it has jurisdiction over the claims asserted in Pam Capital II and to enforce its confirmation order; thus, that it will deny the Motion.

 A reorganization plan functions as a contract in its own right. *In re U.S.*

---

**7.** As they did in Pam Capital I, the Plaintiffs also assert that the basis for removal alleged in the Notice of Removal is insufficient to support removal under the well-pleaded complaint rule. For the reasons set forth in the June 25, 2002 Memorandum Opinion, the Court disagrees, and rejects this argument as a basis for remand.

**8.** The Plan Agent also opposes remand, asserting that the claims raised in Pam Capital II are simply a reformulation of the claims asserted in Pam Capital I, which the Court has already ruled are property of the estate, and that the Plaintiffs' continuing attempts to pursue those claims interferes with the Plan Agent's exclusive right to collect property of the estate for distribution to all creditors in accordance with the terms of the Plan. A brief history is appropriate. On May 28, 2002, the Court entered an Agreed Order Granting Motion For Authority to Pursue Adversary Actions on Behalf of the Estates in favor of the Committee. On June 4, 2002, the Committee filed suit against these same Defendants based upon the conduct giving rise to the claims asserted in both Pam Capital I and Pam Capital II (the "Committee Action"). Upon confirmation of the Plan, the Plan Agent substituted in as the plaintiff in the Committee Action. The Committee Action is pending before this Court as Adversary Proceeding No. 02–4166 and is currently set for trial in April 2004.

**9.** Article 15.1(d) also provides that the Court shall have jurisdiction to "hear and determine all Claims, controversies, suits and disputes against the Debtor to the full extent permitted under 28 U.S.C. § 1334 and 28 U.S.C. § 157".

*Brass Corp.*, 301 F.3d 296, 307 (5th Cir. 2002); *U.S. v. Ramirez*, 291 B.R. 386, 392 (N.D.Tx.2002) (stating that "a confirmed Chapter 11 plan constitute[s] a binding contract"). But, parties may not, by silence or agreement, confer upon the federal courts that jurisdiction which Congress has withheld. *Smith v. Booth*, 823 F.2d 94 (5th Cir.1987); *Warren G. Kleban Engineering Corp. v. Caldwell*, 490 F.2d 800 (5th Cir.1974). Since federal courts are courts of limited jurisdiction, having "only the authority endowed by the Constitution and that conferred by Congress," *Epps v. Bexar–Medina–Atascosa Counties Water Improvement Dist. No. 1*, 665 F.2d 594, 595 (5th Cir.1982), the retention of jurisdiction provisions of the Plan cannot confer or expand the Court's subject matter jurisdiction.[10] *U.S. Brass*, 301 F.3d 296 at 303 (stating that "the source of the bankruptcy court's subject matter jurisdiction is neither the Bankruptcy Code nor the express terms of the Plan. The source of the bankruptcy court's jurisdiction is 28 U.S.C. §§ 1334 and 157") (quoting *United States Tr. v. Gryphon at the Stone Mansion, Inc.*, 216 B.R. 764, 769 (W.D.Pa.1997), *aff'd*, 166 F.3d 552 (3rd Cir.1999)). Thus, this Court must look solely to 28 U.S.C. § 1334 for its jurisdiction and must consider the effect of confirmation of the Plan on its jurisdiction.

The Fifth Circuit recently examined the parameters of post-confirmation jurisdiction in *Bank of Louisiana v. Craig's Stores of Tex., Inc. (In re Craig's Stores of Tex., Inc.)*, 266 F.3d 388 (5th Cir.2001). After confirmation of its plan, the debtor sued its prepetition credit card servicer (a bank) under the parties' contract which had been assumed under the debtor's plan. Of sig-

nificance, however, the debtor's state law claim for damages against the bank "principally dealt with post-confirmation relations between the parties." *Id.* at 391. The debtor asserted that it could bring its post-confirmation claims against the bank in the bankruptcy court eighteen months after confirmation because as long as a bankruptcy case remains open, jurisdiction exists if a dispute is "related to" the bankruptcy under § 1334(b).

The Fifth Circuit rejected that expansive view, attaching critical significance to the debtor's emergence from bankruptcy protection. The Fifth Circuit stated that "[a]fter a debtor's reorganization plan has been confirmed, the debtor's estate, and thus bankruptcy jurisdiction, ceases to exist, other than for matters pertaining to the implementation or execution of the plan." *Craig's Stores*, 266 F.3d at 390. The Fifth Circuit concluded that the bankruptcy court lacked jurisdiction because: (i) the claims principally dealt with post-confirmation relations between the parties, (ii) there was "no antagonism or claim pending between the parties as of the date of the reorganization," and (iii) "no facts or law deriving from the reorganization or the plan were necessary to the claim asserted by [the debtor] against the [b]ank." *Id.* at 391. The Court rejected the argument that jurisdiction existed because the status of its contract with the bank would affect its distribution to creditors under the plan, noting that the "same could be said of any other post-confirmation contractual relations . . . ." *Id.*

The Fifth Circuit further refined its analysis of post-confirmation jurisdiction in

---

**10.** While a plan may not confer or expand subject matter jurisdiction, some courts find a retention of jurisdiction in the plan to be a prerequisite to post-confirmation jurisdiction. In other words, a plan which fails to retain subject matter jurisdiction may leave it lack-

ing, but a plan cannot create jurisdiction where it does not otherwise exist. It is undisputed that the Plan in this case retains jurisdiction "to the full extent permitted under 28 U.S.C. § 1334 and 28 U.S.C. § 157 . . ." *See* Plan, Art. 15.1, p. 24.

*U.S. Brass Corp. v. Travelers Ins. Group (In re U.S. Brass Corp.)*, 301 F.3d 296 (5th Cir.2002), initially noting that § 1334 does not expressly limit bankruptcy jurisdiction upon plan confirmation. However, the Fifth Circuit continued its analysis, stating that

> several courts have adapted [sic] the broad "related to" test for application in post-confirmation disputes. Those courts find that a proceeding falls within the jurisdictional grant if it has "a conceivable effect on the debtor's ability to consummate the confirmed plan ... In the recent case of *In re Craig's Stores of Texas, Inc.*, however, we rejected this expansive view in favor of a 'more exacting theory': 'After a debtor's reorganization plan has been confirmed, the debtor's estate, and thus bankruptcy jurisdiction, ceases to exist, other than for matters pertaining to the implementation or execution of the plan."

*U.S. Brass*, 301 F.3d 296, 304 (quoting *Craig's Stores*, 266 F.3d 388, 390–91). At issue in *U.S. Brass* was a post-confirmation debtor's request for court approval of a proposed agreement to liquidate claims through binding arbitration where the confirmed plan provided that the claims would be resolved in a court of competent jurisdiction and determined by settlement or final judgment. Insurers objected to the proposed claim liquidation agreement on the ground that it constituted an impermissible modification of the confirmed plan. In finding subject matter jurisdiction, the *U.S. Brass* court noted that the insurers were relying on the Bankruptcy Code's prohibition on modification of a substantially consummated plan, and the debtor was relying on its interpretation of the language of the plan. The Fifth Circuit noted that "[b]ankruptcy law will ultimately determine this dispute, and the outcome could affect the parties' post-confirmation rights and responsibilities ...

this proceeding will certainly impact compliance with or completion of the reorganization plan. Consequently, the ... motion pertains to the plan's implementation or execution and therefore satisfies the *Craig's Stores* test for post-confirmation jurisdiction." *U.S. Brass*, 301 F.3d 296 at 305.

■ Applying these principles here, the Court first notes that the facts giving rise to the Fraud Based Claims now pled in Pam Capital II are essentially the same facts giving rise to the claims the Plaintiffs originally pled against the Defendants well prior to confirmation of the Plan in Pam Capital I. Of course, in light of this Court's conclusion that the claims asserted in Pam Capital I are property of the estate, the Plaintiffs have attempted to take those same facts and recast them to support the Fraud Based Claims now alleged in Pam Capital II, thereby attempting to circumvent the effect of the June 25, 2002 Memorandum Opinion and separate Order. And, because the Plaintiffs chose to wait until after confirmation of the Plan, they assert that the Court lacks jurisdiction over the "new" Fraud Based Claims. Such a manipulation of the process should not be permitted.

■ Moreover, the District Court has concluded, by denying the District Court Motion, that the Plaintiffs should not be permitted to amend their complaint in Pam Capital I to assert the Fraud Based Claims. That ruling is now on appeal to the Fifth Circuit. Having sought the remedy of amendment and having lost, the Plaintiffs cannot be permitted to end run that decision by pursuing the identical claims through a remand of the Fraud Based Claims to the State Court. *See Friends of the Earth, Inc. v. Crown Central Pet. Corp.*, 95 F.3d 358 (5th Cir.1996) (affirming dismissal of second complaint as

duplicative of first and stating that a second complaint alleging the same cause of action as a prior, pending related action may be dismissed); *Oliney v. Gardner*, 771 F.2d 856 (5th Cir.1985) (affirming dismissal of second suit based on same claim as first suit and noting that the "court must ensure that the plaintiff does not use the incorrect procedure of filing duplicative complaints to expand the procedural rights he would otherwise enjoy—particularly for the purpose of circumventing the rules pertaining to the amendment of complaints"). *See also Curtis v. Citibank, N.A.*, 226 F.3d 133 (2nd Cir.2000) (affirming in part dismissal of claims pled as separate, second lawsuit where plaintiffs had sought, but been denied, leave to amend to add those same claims in first suit); *Fawcett v. Ditkowsky*, No. 92C2371, 1992 WL 186065 (N.D.Ill. July 27, 1992) (dismissing as duplicative a second suit based upon allegations which plaintiffs sought leave to amend in first suit, but withdrew motion prior to ruling by first court). A plaintiff "has no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendants." *Dockery House Publishing, Inc. v. Quebecor Printing (USA) Corp.*, No. 3:99–CV–2426, 2000 WL 973572 at *1 (N.D.Tex. July 13, 2000) (but holding that the two complaints before it did not arise from same transaction and thus dismissal was not required).

Finally, the damages underlying the Fraud Based Claims are a subset of the damages underlying the Committee Action. As noted previously, in June 2002, after being authorized to bring the action by Court order, the Committee filed the Committee Action based upon the conduct giving rise to the claims asserted in both Pam Capital I and Pam Capital II. In the Committee Action, the Committee asserted claims for: (i) breach of fiduciary duties owed to creditors and the Debtor and its affiliated debtors; (ii) knowing participation in and/or aiding and abetting breach of fiduciary duty by certain of the Defendants; (iii) theft of trade secrets; (iv) tortious interference with the Debtor's existing contracts; (v) tortious interference with prospective contracts and business relations; (vi) civil conspiracy; (vii) fraudulent transfers under both the Bankruptcy Code and applicable state law; (viii) unauthorized post-petition transactions under the Bankruptcy Code; (ix) turnover and accounting; (x) corporate denudement;[11] and (xi) injunctive relief.

Upon confirmation of the Plan, the Plan Agent substituted in as the plaintiff in the Committee Action. In accordance with section 6.11 of the Plan, the Plan Agent is "authorized to conduct an orderly liquidation of the Debtor's property and assets consistent with the terms and provisions of the Plan." *See* Plan, § 6.11. Moreover, section 14.1 of the Plan authorizes the Plan Agent to "prosecute, compromise, or otherwise resolve any Avoidance Actions and any other claims and causes of action constituting Estate Property.... All proceeds derived from the Avoidance Actions or other claims and causes of action shall become Estate Property and distributed in accordance with the Plan." *See* Plan, § 14.1. In turn, Estate Property is defined to mean "all rights, title, and interest in and to any property of every kind or nature[d] owned by the Debtor or its Estate as of the Effective Date, including all

---

**11.** The corporate denudement claim was only recently added by amendment. In addition, the Plan Agent has moved to amend the complaint to add a claim for breach of contract against Banks and its principal, William Banks. That motion has been opposed and argued, and is currently under advisement.

property within the meaning of section 541 of the Bankruptcy Code." *See* Plan, Exhibit B. Thus, in accordance with the Plan's terms, the Plan Agent must liquidate all claims which are Estate Property, including those asserted in the Committee Action, and distribute any proceeds received to all creditors under the Plan, including the Plaintiffs.

A recovery by the Plaintiffs on the Fraud Based Claims, if remanded to the State Court, will reduce the damages the Plan Agent seeks to recover in the Committee Action (the Plan Agent seeks to recover for the Debtor's inability to repay all bondholder claims in full, including the amounts owing to the Plaintiffs) and, if the Plaintiffs are allowed to pursue their claims separately and are successful in that pursuit, may reduce the assets available to the Plan Agent to satisfy the outstanding claims of all of the Debtor's creditors through distributions under the Plan. Specifically, the claims against Hardin and Ledbetter may give rise to claims against the Debtor's D & O insurance policy. If policy limits are exhausted by the Plaintiffs' successful pursuit of their alleged claims, the Plan Agent's ability to recover from that asset will be eliminated. Moreover, since the Defendants' respective abilities to respond to any judgment taken against them is unknown at this stage of the litigation, a race to their assets[12] by

12. The Fifth Circuit has drawn a distinction between ownership of a D & O policy and ownership of its proceeds in certain circumstances. *See In re Louisiana World Exposition, Inc.*, 832 F.2d 1391 (5th Cir.1987). In *Louisiana World Exposition*, the issue was whether the proceeds of a liability policy owned by a bankrupt debtor which provided liability coverage exclusively for its directors and officers and which provided that proceeds were payable only to them were property of the debtor's estate. The Fifth Circuit drew a distinction between ownership of the policy and ownership of the proceeds, and held that the proceeds were not property of the debtor's estate. The Fifth Circuit has stated that "[t]he overriding question when determining whether insurance proceeds are property of the estate is whether the debtor would have a right to receive and keep those proceeds when the insurer paid on a claim." *Houston v. Edgeworth (In re Edgeworth)*, 993 F.2d 51, 55 (5th Cir.1993) (holding that proceeds of malpractice insurance policy owned by chapter 7 debtor were not property of the chapter 7 estate, since proceeds could not be made available for distribution to creditors other than victims of medical malpractice and their relatives and there was no allegation that the policy limit was insufficient to cover competing claims to proceeds). The Fifth Circuit jurisprudence on the distinction between ownership of a policy and ownership of its proceeds has been described as "muddled" and a "thicket," *American Nuclear Insurers v.* *Babcock and Wilcox Co.*, No 01–2751, 2002 WL 1334882 at *4 (E.D.La. June 14, 2002), and the Fifth Circuit itself recognizes that its distinction has not been broadly applied. The Fifth Circuit has concluded, however, that where a debtor corporation owns a liability policy that exclusively covers its directors and officers, the proceeds are not property of the estate, but where the debtor owns a policy that covers *its own* liability vis-a-vis third parties, both the policy and its proceeds are property of the estate. *Homsy v. Floyd (In re Vitek, Inc.)*, 51 F.3d 530 (5th Cir.1995). In this case, implementation of the Plan will be affected no matter what the terms of any D & O policy might be. Either the proceeds of that policy were property of the estate during the pendency of the case, and therefore should be recoverable for the benefit of *all* creditors, or the proceeds belong to the director/officer defendants here, in which case the Plan Agent is competing with the Plaintiffs as an injured party for a portion of the proceeds. Because of the nature of the injuries alleged here, this case is distinguishable from *Edgeworth*, where the proceeds were not available for distribution to all creditors, but rather only to those who were victims of that debtor's medical malpractice. If the Plan Agent succeeds in proving its allegations in the Committee Action, *all* of the debtor's creditors have been injured. Recovery by the Plaintiffs here against any policy would necessarily reduce proceeds available for distribution under the Plan to all creditors.

both the Plan Agent and the Plaintiffs could result in a disproportionate recovery in favor of the Plaintiffs as compared with the Debtor's other creditors. That potential inequality of distribution to similarly situated creditors is precisely what the Bankruptcy Code is designed to prevent.

### Conclusion

Because: (i) the claims at issue in Pam Capital II deal with the parties' prepetition relationship with the Debtor; (ii) the same facts giving rise to the claims asserted in Pam Capital II had given rise to pending litigation between the parties prior to confirmation of the Plan; (iii) the prosecution of the claims asserted in the Committee Action is integral to implementation of the Plan; and (iv) the Plaintiffs' efforts to prosecute the Fraud Based Claims independently from those asserted by the Plan Agent would adversely impact the Plan Agent's duties under the Plan, this Court is satisfied that the *Craig's Stores* test for post-confirmation jurisdiction is satisfied. Moreover, because the Plaintiffs invoked § 1334 bankruptcy jurisdiction over the Fraud Based Claims when they filed the District Court Motion, the denial of which is now on appeal to the Fifth Circuit, neither remand nor abstention with respect to those claims is appropriate. For these reasons, the Motion will be denied by separate Order.