**REVISED OCTOBER 10, 2001**
**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**
**No. 00-20383**

**CRAIG'S STORES OF TEXAS, INC.,**

**Debtor.**

_____

**BANK OF LOUISIANA,**

**Appellant,**

**versus**

**CRAIG'S STORES OF TEXAS, INC.,**

**Appellee.**

_____

Appeal from the United States District Court
for the Southern District of Texas
_____

October 3, 2001

Before JONES, DeMOSS, and BENAVIDES, Circuit Judges.

EDITH H. JONES, Circuit Judge:

The district court perceptively concluded that the exercise of bankruptcy court jurisdiction over this contract dispute, which arose after the debtor's Chapter 11 plan was confirmed, was improper. Agreeing with other circuit courts that

bankruptcy court jurisdiction does not last forever, we affirm the vacation and dismissal of the bankruptcy court judgment.

The debtor, Craig's Stores, has done business with Bank of Louisiana since 1989, using the Bank to administer Craig's in-house private label credit card program and thus to assist in financing Craig's operations by buying the company's receivables. The parties' complex arrangement continued after Craig's sought Chapter 11 bankruptcy protection in 1993, and their contract was assumed as part of the debtor's reorganization plan confirmed in December 1994.[1]

Eighteen months later, in mid-1996, Craig's sued the Bank in the bankruptcy court, asserting state law claims for damages alleged to have arisen in 1994 and 1995. Neither the Bank nor the bankruptcy court questioned the court's jurisdiction. The case moved forward, culminating in a 12-day trial that aired the parties' mutual grievances and resulted in a quarter-million dollar judgment for Craig's.

The Bank appealed to the district court on several points, none of which touched on jurisdiction. At a 1998 hearing convened to discuss the merits of the appeal, the district court inquired *sua sponte* how the bankruptcy court could exercise

---

[1]     The confirmation order retained bankruptcy court jurisdiction, but only to the extent of matters regarding confirmation and completion of the debtor's plan.

2

jurisdiction over a post-confirmation, state law-based contract dispute. Further briefing by the parties failed to persuade the district court that jurisdiction originally existed over the adversary proceeding in bankruptcy court, and the district court dismissed it for lack of jurisdiction.[2] Craig's appealed.

Craig's contends that the bankruptcy court had jurisdiction to resolve its dispute with the Bank because (a) the parties' contract existed before confirmation; (b) the contract was assumed in the plan of reorganization; (c) the resolution of the claim could affect Craig's ability to make payments under the plan; and if all else fails, (d) the Bank's "counter-claim" to convert the confirmed case to Chapter 7 invoked jurisdiction sufficient to include Craig's original suit against the Bank.

The first three factors are subsumed in Craig's theory that so long as a bankruptcy case remains open, jurisdiction exists if a dispute is "related to" the bankruptcy, 28 U.S.C. § 1334(b), that is, if the outcome of the proceeding could conceivably have an effect on the debtor's estate. See In re Wood, 825 F.2d 90, 93 (5th Cir. 1987). Some circuits have utilized this theory, which originated to describe the scope of bankruptcy jurisdiction during the pendency of the case, to assess jurisdiction after confirmation

---

[2] The court alternatively reversed because the bankruptcy court erroneously admitted expert witness testimony for Craig's, and because Craig's failed to prove that its losses were caused by the Bank.

of a reorganization plan, but they have not applied it on post-confirmation facts like those before us.  See, e.g., In re C F & I Fabricators of Utah, Inc., 150 F.3d 1233, 1237 (10th Cir. 1998); U.S. Trustee v. Gryphon at the Stone Mansion, Inc., 166 F.3d 552, 555-56 (3d Cir. 1999); In re Wolverine Radio Co., 930 F.2d 1132, 1140-43 (6th Cir. 1991).

The more persuasive theory of post-confirmation jurisdiction, however, attaches critical significance to the debtor's emergence from bankruptcy protection.  As the Seventh Circuit put it,

> Once the bankruptcy court confirms a plan of reorganization, the debtor may go about its business without further supervision or approval.  The firm also is without the *protection* of the bankruptcy court.  It may not come running to the bankruptcy judge every time something unpleasant happens.

Pettibone Corp. v. Easley, 935 F.2d 120, 122 (7th Cir. 1991).  After a debtor's reorganization plan has been confirmed, the debtor's estate, and thus bankruptcy jurisdiction, ceases to exist, other than for matters pertaining to the implementation or execution of the plan.  In re Fairfield Communities, Inc., 142 F.3d 1093, 1095 (8th Cir. 1998); In re Johns-Manville Corp., 7 F.3d 32, 34 (2d Cir. 1993).  No longer is expansive bankruptcy court jurisdiction required to facilitate "administration" of the debtor's estate, for there is no estate left to reorganize.  This theory has antecedents in our court's jurisprudence, which has

4

observed that the reorganization provisions of the former Bankruptcy Act "envisage[] that out of the proceedings will come a newly reorganized company capable of sailing forth in the cold, cruel business world with no longer the protective wraps of the federal Bankruptcy Court." In re Seminole Park & Fairgrounds, Inc., 502 F.2d 1011, 1014 (5th Cir. 1974). Because it comports more closely with the effect of a successful reorganization under the Bankruptcy Code than the expansive jurisdiction cases, we adopt this more exacting theory of post-confirmation bankruptcy jurisdiction.

Viewed from the narrower perspective, it is clear that Craig's claim against the Bank principally dealt with post-confirmation relations between the parties. There was no antagonism or claim pending between the parties as of the date of the reorganization. The fact that the account management contract existed throughout the reorganization and was, by implication, assumed as part of the plan is of no special significance. And even if such circumstances might bear on post-confirmation bankruptcy court jurisdiction, no facts or law deriving from the reorganization or the plan was necessary to the claim asserted by Craig's against the Bank. Finally, while Craig's insists that the status of its contract with the Bank will affect its distribution to creditors under the plan, the same could be said of any other post-confirmation contractual relations in which Craig's is

engaged. In sum, the state law causes of action asserted by Craig's against the Bank do not bear on the interpretation or execution of the debtor's plan and therefore do not fall within the bankruptcy court's post-confirmation jurisdiction. See 11 U.S.C. § 1142(b).

In re Case, 937 F.2d 1014 (5th Cir. 1991), is not to the contrary. In Case, this court held that a post-confirmation dispute over a promissory note provided for in the debtor's reorganization plan was a core proceeding under 28 U.S.C. § 157. See id. at 1017, 1019-20. The note was executed in settlement of a creditor's claim as part of the reorganization plan itself. See id. at 1017. Unlike the dispute in Case, the post-confirmation dispute at issue in this appeal has nothing to do with any obligation created by the debtor's reorganization plan. Compare In re Nat'l Gypsum Co., 118 F.3d 1056, 1064 (5th Cir. 1997) (holding that action seeking declaratory judgment as to whether confirmation order bars collection of asserted preconfirmation liability is core proceeding under 28 U.S.C. § 157).

In a last-ditch effort to bootstrap jurisdiction, Craig's relies on a separate post-confirmation adversary proceeding that the Bank commenced in bankruptcy court two months after Craig's filed the contract-based lawsuit. The Bank sought to require the debtor to cure defaults in the parties' contract or, in the alternative, to convert the case to Chapter 7. Craig's asserts

6

that this adversary proceeding was consolidated with its contract claim, and that the two were tried together.  This is not entirely accurate.  The Bank withdrew its motion to convert after Craig's placed certain disputed sums in escrow.  The court never considered or ruled upon the withdrawn motion to convert.  That motion cannot be used to establish, retroactively, the bankruptcy court's jurisdiction.

For the foregoing reasons, the judgment of the district court, which vacated and dismissed the adversary proceeding in bankruptcy court, is **AFFIRMED.**