In re COHO ENERGY, INC.,
et al., Debtors.

Coho Oil & Gas, Inc. and Citation 2002
Investment Limited Partnership,
Plaintiffs,

v.

Finley Resources, Inc., and Newkumet
Exploration, Inc., Defendants.

Bankruptcy No. 02–31189–BJH–11.
Adversary No. 03–3701–BJH.

United States Bankruptcy Court,
N.D. Texas,
Dallas Division.

March 3, 2004.

Michael W. Anglin, Louis Raymond Strubeck, Jr., Fulbright and Jaworski, Dallas, TX, for Coho Oil & Gas, Inc., Plaintiff.

Christopher H. Rentzel, Bracewell & Patterson, Dallas, TX, for Citation 2002 Investment Limited Partnership, Plaintiff.

Bruce Claycombe, Gary, Porter & Donavan, · Dallas, TX, Amy Deaville Reilly, Geary, Porter & Donovan, P.C., Addison, TX, for Finley Resources, Inc., Defendant.

Ian T. Peck, Haynes and Boone, Ft. Worth, TX, for Newkumet Exploration, Inc., Defendant.

### MEMORANDUM OPINION AND ORDER

BARBARA J. HOUSER, Bankruptcy Judge.

On February 6, 2002, Coho Energy, Inc., Coho Resources, Inc., and Coho Oil & Gas, Inc. (collectively, the "Debtors") filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.[1] On January 23, 2003, the Court confirmed the Debtors' Joint Consolidated Plan of Liquidation as Modified (the "Plan"). As is relevant here, the Plan provided that the estates' causes of action would vest in the liquidating trust, to be liquidated for the exclusive benefit of creditors and distributed to them in accordance with the Plan.

On August 27, 2003, Coho Oil & Gas, Inc. ("Coho") and Citation 2002 Investment Limited Partnership ("Citation") (collectively, the "Plaintiffs") filed the above-captioned adversary proceeding (the "Adversary Proceeding") against Finley Resources, Inc. ("Finley") and Newkumet Exploration, Inc. (the "Defendants"). In broad brush, the complaint[2] alleges that

---

1. The cases are jointly administered by virtue of an Order entered on February 7, 2002.

2. Plaintiffs filed an amended complaint on October 28, 2003, prior to the agreed-upon deadline to answer or otherwise respond to the complaint. All references in this Memorandum Opinion and Order to the complaint shall be to the amended complaint, except where otherwise noted.

Coho owned certain oil and gas interests and/or leases, which are subject to two Joint Operating Agreements (one dated in 1961 and the other in 1991) and that Finley was the operator under those agreements. The complaint further alleges that (i) the Defendants filed, in 2001, certain applications with the Oklahoma Corporation Commission which Coho contested; (ii) the parties entered into a letter agreement to resolve their dispute; (iii) the Defendants thereafter misrepresented their well proposals, and then completed a well in November of 2001 which had never been proposed to Coho, in violation of the operating agreements; and (iv) on or about August 27, 2002, Citation acquired all of Coho's right, title and interest in the oil and gas interests and/or leases that are the subject of the suit.[3] The complaint contains claims for breach of the pre-petition operating agreements, an accounting of expenses, profits and losses of a well, negligent misrepresentation, declaratory relief with respect to the parties' rights and obligations under the operating agreements, and civil conspiracy.

On November 6, 2003, Finley filed its motion to dismiss for failure to state a claim and lack of subject matter jurisdiction or, in the alternative, for permissive abstention. On November 25, 2003, Newkumet filed its motion to dismiss for lack of subject matter jurisdiction, adopting Finley's allegations and arguments. The Plaintiffs have filed a response to both motions and a sur-reply to Finley's reply.

*Subject Matter Jurisdiction*

Initially, the Court must decide if it has jurisdiction over the claims asserted in the Adversary Proceeding. The Defendants contend that this Court lacks subject matter jurisdiction because the Adversary Proceeding was filed after confirmation of the Plan, at a time when the bankruptcy estate ceased to exist and bankruptcy jurisdiction is more limited. Conversely, the Plaintiffs point to the retention of jurisdiction provisions of the Plan and conclude that because the claims asserted in the Adversary Proceeding are pre-petition claims between Coho and the Defendants, and Coho's share of any recovery is to be distributed to creditors under the Plan, the Court has subject matter jurisdiction over the Adversary Proceeding. For the reasons explained more fully below, the Court concludes that it does have jurisdiction.

■■■ A reorganization plan functions as a contract in its own right. *U.S. Brass Corp. v. Travelers Ins. Group (In re U.S. Brass Corp.),* 301 F.3d 296, 307 (5th Cir. 2002); *U.S. v. Ramirez,* 291 B.R. 386, 392 (N.D.Tex.2002) (stating that a "confirmed Chapter 11 plan constitute[s] a binding contract"). However, since federal courts are courts of limited jurisdiction, having "only the authority endowed by the Constitution and that conferred by Congress," *Epps v. Bexar–Medina–Atascosa Counties Water Improvement Dist. No. 1,* 665 F.2d 594, 595 (5th Cir.1982) (quoting *Save the Bay, Inc. v. U.S. Army,* 639 F.2d 1100, 1102 (5th Cir.1981)), the retention of jurisdiction provisions of the Plan cannot confer or expand the Court's subject matter jurisdiction.[4] *U.S. Brass,* 301 F.3d 296 at 303

---

3. One of the defendants' arguments in favor of abstention is that since Citation acquired all of Coho's interest in the leases, that Coho is not a proper party and has no interest in this action. A proposed second amended complaint, however, alleges that although Citation acquired Coho's interest in the leases in 2002, it did not acquire Coho's rights to

amounts due to Coho before the acquisition. The Plaintiffs have sought leave to amend the complaint in their sur-reply.

4. While a plan may not confer or expand subject matter jurisdiction, some courts find a retention of jurisdiction in the plan to be a prerequisite to post-confirmation jurisdiction.

(stating that "the source of the bankruptcy court's subject matter jurisdiction is neither the Bankruptcy Code nor the express terms of the Plan. The source of the bankruptcy court's jurisdiction is 28 U.S.C. §§ 1334 and 157") (quoting *U.S. Trustee. v. Gryphon at the Stone Mansion, Inc.*, 216 B.R. 764, 769 (W.D.Pa.1997), *aff'd*, 16 F.3d 552 (3rd Cir.1994)). Thus, this Court must look solely to 28 U.S.C. § 1334 for its jurisdiction and must consider the effect of confirmation of the Plan on its jurisdiction.

The Fifth Circuit recently examined the parameters of post-confirmation jurisdiction in *Bank of Louisiana v. Craig's Stores of Tex., Inc. (In re Craig's Stores of Tex., Inc.)* 266 F.3d 388 (5th Cir.2001). After confirmation of its plan, the debtor sued its pre-petition credit card servicer (a bank) under the parties' contract which had been assumed under the debtor's plan. Of significance, however, the debtor's state law claim for damages against the bank "principally dealt with post-confirmation relations between the parties." *Id.* at 391. The debtor asserted that it could bring its post-confirmation claims against the bank in the bankruptcy court eighteen months after confirmation because as long as a bankruptcy case remains open, jurisdiction exists if a dispute is "related to" the bankruptcy under § 1334(b).

The Fifth Circuit rejected that expansive view, attaching critical significance to the debtor's emergence from bankruptcy protection. The Fifth Circuit stated that "[a]fter a debtor's reorganization plan has been confirmed, the debtor's estate, and thus bankruptcy jurisdiction, ceases to exist, other than for matters pertaining to the implementation or execution of the plan." *Craig's Stores*, 266 F.3d at 390. The Fifth Circuit concluded that the bankruptcy court lacked jurisdiction because:

(i) the claims principally dealt with post-confirmation relations between the parties, (ii) there was "no antagonism or claim pending between the parties as of the date of the reorganization," and (iii) "no facts or law deriving from the reorganization or the plan were necessary to the claim asserted by [the debtor] against the [b]ank." *Id.* at 391. The Court rejected the argument that jurisdiction existed because the status of its contract with the bank would affect its distribution to creditors under the plan, noting that the "same could be said of any other post-confirmation contractual relations . . . ." *Id.*

The Fifth Circuit further refined its analysis of post-confirmation jurisdiction in *U.S. Brass Corp. v. Travelers Ins. Group (In re U.S. Brass Corp.)*, 301 F.3d 296 (5th Cir.2002), initially noting that § 1334 does not expressly limit bankruptcy jurisdiction upon plan confirmation. However, the Fifth Circuit continued its analysis, stating that

several courts have adapted [sic] the broad "related to" test for application in post-confirmation disputes. Those courts find that a proceeding falls within the jurisdictional grant if it has a "conceivable effect on the debtor's ability to consummate the confirmed plan . . ." In the recent case of *In re Craig's Stores of Texas, Inc.*, however, we rejected this expansive view in favor of a "more exacting theory": "After a debtor's reorganization plan has been confirmed, the debtor's estate, and thus bankruptcy jurisdiction, ceases to exist, other than for matters pertaining to the implementation or execution of the plan."

*U.S. Brass*, 301 F.3d 296, 304 (quoting *Craig's Stores*, 266 F.3d 388, 390–91). At issue in *U.S. Brass* was a post-confirma-

In other words, a plan which fails to retain subject matter jurisdiction may leave it lacking, but a plan cannot create jurisdiction where it does not otherwise exist.

tion debtor's request for court approval of a proposed agreement to liquidate claims through binding arbitration where the confirmed plan provided that the claims would be resolved in a court of competent jurisdiction and determined by settlement or final judgment. Insurers objected to the proposed claim liquidation agreement on the ground that it constituted an impermissible modification of the confirmed plan. In finding subject matter jurisdiction, the *U.S. Brass* court noted that the insurers were relying on the Bankruptcy Code's prohibition on modification of a substantially consummated plan, and the debtor was relying on its interpretation of the language of the plan. The Fifth Circuit noted that "[b]ankruptcy law will ultimately determine this dispute, and the outcome could affect the parties' post-confirmation rights and responsibilities ... this proceeding will certainly impact compliance with or completion of the reorganization plan. Consequently, the ... motion pertains to the plan's implementation or execution and therefore satisfies the *Craig's Stores* test for post-confirmation jurisdiction." *U.S. Brass*, 301 F.3d 296 at 305.

■ Applying these principles here, the Court first notes that the claims at issue in the Complaint arose pre-petition. While Coho chose not to formally assert the claims until after the Plan was confirmed, the claims were preserved under the Plan and assigned to the creditor's trust for prosecution, with any net recoveries to be distributed to creditors pursuant to the Plan's terms. Under the Plan, the trustee is obligated to bring claims, such as those asserted in the Adversary Proceeding, if he believes value will be realized for Coho's creditors.

Because: (i) the claims at issue in the Adversary Proceeding deal with Coho's pre-petition relationship with the Defen-

dants; (ii) the Plan contemplates the prosecution of the claims and the distribution of Coho's share of any recovery to creditors under the Plan; and (iii) the prosecution of the claims will thus impact compliance with, or completion of, the Plan, this Court is satisfied that the *Craig's Stores* test for post-confirmation jurisdiction is satisfied. Because it concludes that it exercises subject matter jurisdiction over the Adversary Proceeding, the Court turns next to Finley's request that it abstain from exercising that jurisdiction.

### *Permissive abstention*

■ Permissive or equitable abstention is governed by § 1334(c)(1) which states: Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for state law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

28 U.S.C. § 1334(c)(1). Under § 1334(c)(1), a court may, in its discretion, abstain from deciding either core or non-core proceedings if the interests of justice, comity, or respect for state law so require. *Gober v. Terra + Corp. (In re Gober)*, 100 F.3d 1195, 1206 (5th Cir.1996).

■ Courts have stated that the "starting point" in analyzing whether permissive abstention is appropriate is whether abstention "will impede or disrupt the bankruptcy court's 'exclusive and non-delegable control over the administration of the estate within its possession.'" *See Republic Reader's Serv., Inc. v. Magazine Serv. Bureau, Inc. (In re Republic Reader's Serv., Inc.)*, 81 B.R. 422, 426 (Bankr. S.D.Tex.1987) (quoting *Thompson v. Magnolia Petroleum Co.*, 309 U.S. 478, 483, 60 S.Ct. 628, 84 L.Ed. 876 (1940)). Other factors to consider are drawn from the elements of mandatory abstention: (i) the existence of two closely related proceed-

ings based upon state law or a state law cause of action; (ii) the absence of any basis for jurisdiction other than section 1334; (iii) the likelihood of timely adjudication in state court; (iv) the predominance of state law issues; and (v) the degree of relatedness of the proceeding to the bankruptcy case. *Id.* at 428. In addition, a court may consider the burden on its docket, the likelihood that the commencement of the proceeding in bankruptcy court involves forum-shopping by one of the parties, the existence of the right to a jury trial, and the presence in the proceeding of non-debtor parties. *Id.* at 429; *see also In re Denton County Elec. Co-op.*, 281 B.R. 876, 881 (Bankr.N.D.Tex..2002).

For the reasons explained more fully below, the Court concludes that abstention pursuant to § 1334(c)(1) is appropriate with respect to the Adversary Proceeding. First, the Court notes that there is no basis for federal jurisdiction other than § 1334. Second, state law issues do not merely predominate; they overwhelm. This is an action seeking damages for pre-petition breaches of pre-petition contracts and for pre-petition tortious conduct, and it is a non-core proceeding which neither arises in nor under title 11. *WRT Creditors Liquidation Trust v. C.I.B.C. Oppenheimer Corp.* 75 F.Supp.2d 596 (S.D.Tex. 1999) (noting that many courts have held that state law claims for pre-petition breaches of contract are not core matters); *see also Broyles v. U.S. Gypsum Co.*, 266 B.R. 778, 783 (E.D.Tex.2001) (noting that were all of a case's alleged tortious conduct and breaches of contract occurred pre-

petition, the case is non-core). Third, by virtue of Citation's acquisition of Coho's rights to the leases during the bankruptcy case, Coho's damages in the Adversary Proceeding are limited to those that accrued prior to the sale. Thus, it appears that Citation, a non-debtor, is the party with the most significant economic interest in the outcome of the Adversary Proceeding. Fourth, there is no reason to believe that the claims cannot be timely adjudicated in state court,[5] a forum arguably more familiar with oil and gas law than this Court.

The Plaintiffs ask this Court to deny abstention because they believe the Adversary Proceeding will proceed to trial more expeditiously here than if they must start again in state court. While that might be true if it was clear that this Court could conduct the trial, such is not the case here. Plaintiffs concede that the Defendants enjoy a right to a jury trial on the claims asserted in the Adversary Proceeding. While the time to assert that right has not yet expired, if asserted and the parties do not consent to a jury trial before this Court, the reference of the Adversary Proceeding will have to be withdrawn and the District Court will have to conduct the jury trial. Therefore, there is no assurance that the action will proceed to trial before this Court and, even if it does, it is unlikely that the existing trial setting will stand. If the reference is withdrawn, this Court is unable to determine when the District Court would proceed to trial.

For these reasons, the Court believes it appropriate to abstain from hearing the

---

5. In part for this reason, *Hester v. Coho Energy Inc. (In re Coho Energy, Inc.)*, No. 3:01–CV–0407, 2002 WL 523948 (N.D.Tex. Apr.5, 2002), in which the District Court found no abuse of discretion in the bankruptcy court's refusal to abstain, is distinguishable. In *Hester*, an action had been pending in Louisiana state court for over four years without resolu-

tion. In addition, the plaintiff there had filed a proof of claim in the bankruptcy court based upon its state law claims against the debtor and the debtor had objected that claim. It was in the context of a motion for summary judgment on the claim objection, clearly a core proceeding, that the bankruptcy court decided not to abstain.

Adversary Proceeding pursuant to 28 U.S.C. § 1334(c)(1). It is therefore

ORDERED that this Court hereby abstains from hearing this Adversary Proceeding.