**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

In re: PEGASUS GOLD CORPORATION, et al.

*Debtor.*

THE STATE OF MONTANA; THE STATE OF MONTANA DEPARTMENT OF ENVIRONMENTAL QUALITY; THE STATE OF MONTANA DEPARTMENT OF ADMINISTRATION, RISK MANAGEMENT DIVISION; THE ATTORNEY GENERAL OF THE STATE OF MONTANA; and SPECTRUM ENGINEERING, INC.,

*Appellants,*

v.

HARRISON J. GOLDIN, in his capacity as liquidating trustee for the Pegasus Gold Corporation Liquidating Trust; and RECLAMATION SERVICES CORPORATION,

*Appellees.*

No. 03-15958

D.C. No.
CV-02-00255-DWH

OPINION

Appeal from the United States District Court
for the District of Nevada
David Warner Hagen, District Judge, Presiding

Argued and Submitted
November 5, 2004—San Francisco, California

Filed January 11, 2005

385

Before: Pamela Ann Rymer and Michael Daly Hawkins, Circuit Judges, and Rudi M. Brewster,* Senior District Judge.

Opinion by Judge Hawkins

*Honorable Rudi M. Brewster, Senior United States District Judge for the Southern District of California, sitting by designation.

## COUNSEL

Brian M. Morris (argued), Office of the Montana Attorney General, Helena, Montana, for the appellants.

Michael P. Richman (argued), Mayer, Brown, Rowe & Maw, LLP, New York, New York, and Edmond "Buddy" Miller (briefed), Downey, Brand, LLP, Reno, Nevada, for the appellees.

## OPINION

HAWKINS, Circuit Judge:

We must decide difficult questions regarding the bankruptcy court's post-confirmation subject matter jurisdiction and the scope of a state's waiver of Eleventh Amendment immunity. We conclude that even though a bankruptcy court's post-confirmation "related to" jurisdiction is substantially more limited than its pre-confirmation jurisdiction, there is a sufficiently close nexus in this case between the current action and the original bankruptcy proceeding to confer subject matter jurisdiction on the bankruptcy court. Nonetheless, because the current adversarial action is not "logically related" to the original proofs of claims that the State of Montana filed in the underlying bankruptcy action, the State has not waived its Eleventh Amendment immunity with respect to the current action and the claims against it must be dismissed.

## FACTS AND PROCEDURAL HISTORY

In 1998, Pegasus Gold Corporation and eighteen of its affiliates (collectively, the "Debtors") commenced voluntary Chapter 11 proceedings in the United States Bankruptcy Court in Nevada. The Debtors operated two mines in Montana (the "Zortman Sites"). The State of Montana and its Department of Environmental Quality ("DEQ") (collectively, the "State") filed several proofs of claims against the Debtors. These claims pertained to the Debtors' reclamation obligations and various environmental compliance and clean up obligations. According to the State, although Pegasus had

posted substantial reclamation bonds in connection with the mines, the existing amounts would not be sufficient and the State sought an additional $8.5 million in the bankruptcy proceeding.

The Debtors and the State then participated in lengthy and extensive negotiations concerning financial responsibility for reclamation and water treatment at the Zortman Sites. Eventually, the Debtors, the State and a number of other parties reached a settlement agreement, which the Bankruptcy Court approved on December 22, 1998 (the "Zortman Agreement"). Under the Zortman Agreement, the Debtors would form a new entity, Reclamation Services Corporation ("RSC"), which would perform reclamation work for the State at the mines, at least until the State could conduct a competitive bidding process for such work. The bankruptcy estate would contribute up to $1 million in operating capital for RSC, and also transfer $600,000 to the State to be used only for paying RSC for the reclamation work. The estate also transferred another $450,000 to the State for reclamation purposes, but this sum was not expressly designated to be paid to RSC.

A few days later, the Bankruptcy Court confirmed the Debtors' liquidating/reorganizing plan (the "Plan"). Article VIII of the Plan specifically provided for the formation of RSC, as contemplated by the Zortman Agreement, and called for the Debtors to contribute up to $1 million in equity capital for RSC. Shares of RSC became assets of the Debtors' Liquidating Trust.

Shortly after Plan confirmation, Montana and RSC entered into a letter agreement enabling RSC to begin interim reclamation work while the parties negotiated a more comprehensive agreement. Montana and RSC eventually executed a formal work agreement in April 1999 (the "Master Agreement"). Among other things, the Master Agreement calls for disputes between Montana and RSC to be decided by arbitration or in Montana state court pursuant to Montana law.

Problems arose almost immediately. After a series of billing disputes, Montana terminated RSC on June 24, 1999, and hired a new company, Spectrum Engineering, Inc. ("Spectrum"), to perform the reclamation work. Spectrum apparently hired a number of RSC employees to do this work. RSC went out of business shortly thereafter.

RSC and the bankruptcy trustee (collectively, "Appellees") then brought the current action against the State and Spectrum in bankruptcy court, alleging a number of contract claims stemming from the State's alleged breach of the Zortman Agreement, the Plan, and the Master Agreement. The complaint also alleges that the State: was unjustly enriched, fraudulently induced RSC to enter into the Letter Agreement and Master Agreement, and tortiously interfered with RSC's relationship with its employees. Separate claims against Spectrum for tortious interference and conversion round out the complaint.

The State and Spectrum (collectively, "Appellants") moved to dismiss the complaint, arguing that the bankruptcy court lacked subject matter jurisdiction over the action. The State also asserted Eleventh Amendment immunity from suit. The bankruptcy court denied the motion, and the district court affirmed the bankruptcy court's denial. *In re Pegasus Gold Corp.*, 296 B.R. 227 (D. Nev. 2003).

This appeal followed. With respect to the determination that the State waived its sovereign immunity, the bankruptcy court's and district court's orders on this issue are immediately appealable under the "collateral order doctrine." *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 147 (1993). Moreover, we are also required to resolve issues of subject matter jurisdiction in an interlocutory appeal from a denial of immunity, because "if appellate courts lack jurisdiction, they cannot review the merits of these properly appealed rulings." *Meredith v. Oregon*, 321 F.3d 807, 816 (9th Cir. 2003). Thus, we consider the existence of sub-

ject matter jurisdiction before determining the sovereign immunity issue.

## STANDARD OF REVIEW

Questions of subject matter jurisdiction are reviewed de novo, *In re McGhan*, 288 F.3d 1172, 1178 (9th Cir. 2002), as are questions of sovereign immunity. *In re Bliemeister*, 296 F.3d 858, 861 (9th Cir. 2002).

## DISCUSSION

### I. **Subject Matter Jurisdiction**

**[1]** A bankruptcy court has jurisdiction over "all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). Proceedings "arising in" bankruptcy cases are generally referred to as "core" proceedings, and essentially are proceedings that would not exist outside of bankruptcy, such as "matters concerning the administration of the estate," "orders to turn over property of the estate," and "proceedings to determine, avoid, or recover preferences." 28 U.S.C. § 157(b)(2); *see also In re Harris Pine Mills*, 44 F.3d 1431, 1435-37 (9th Cir. 1995).

**[2]** The bankruptcy court also has jurisdiction over a much broader set of cases: those proceedings that are "related to" a bankruptcy case. The Ninth Circuit has adopted the "*Pacor* test" for determining the scope of "related to" jurisdiction. *In re Fietz*, 852 F.2d 455, 457 (9th Cir. 1988). Under this formulation, the test is whether:

> *the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy.* Thus, the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities,

options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

*Id.* (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)) (emphasis in original).

**[3]** We have yet to apply the *Pacor* test in the post-confirmation context. Many other circuits and bankruptcy courts have modified or limited the test when the proceeding arises post-confirmation. *See, e.g., In re Craig's Stores of Texas, Inc.*, 266 F.3d 388, 390-91 (5th Cir. 2001) (bankruptcy jurisdiction ceases to exist "other than for matters pertaining to the implementation or execution of the plan"); *Trans World Airlines, Inc. v. Karabu Corp.*, 196 B.R. 711, 714 (Bankr. D. Del. 1996) (subject matter jurisdiction over proceedings that could affect the debtor's ability to consummate the plan); *In re Walker*, 198 B.R. 476, 482 (Bankr. E. D. Va. 1996) (post-confirmation jurisdiction remains to the extent disputes affect successful implementation and consummation of the plan); *Eubanks v. Esenjay Petroleum Corp.*, 152 B.R. 459, 464 (E. D. La. 1993) (jurisdiction exists if proceeding has "a conceivable effect on the debtor's ability to consummate the confirmed plan").

**[4]** The Third Circuit recently reviewed the assorted post-confirmation approaches, concluding that although the courts "have varied the standard they apply post-confirmation, the essential inquiry appears to be whether there is a close nexus to the bankruptcy plan or proceeding sufficient to uphold bankruptcy court jurisdiction over the matter." *In re Resorts Int'l, Inc.*, 372 F.3d 154, 166-67 (3d Cir. 2004). The court also recognized that in cases involving continuing trusts (such as litigation trusts, or, as here, a liquidating trust), trusts "by their nature maintain a connection to the bankruptcy even after the plan has been confirmed." *Id.* at 167. The court ultimately concluded that matters affecting "the interpretation, implementation, consummation, execution, or administration

of the confirmed plan will typically have the requisite close nexus." *Id.*

**[5]** We agree that post-confirmation bankruptcy court jurisdiction is necessarily more limited than pre-confirmation jurisdiction, and that the *Pacor* formulation may be somewhat overbroad in the post-confirmation context. Therefore, we adopt and apply the Third Circuit's "close nexus" test for post-confirmation "related to" jurisdiction, because it recognizes the limited nature of post-confirmation jurisdiction but retains a certain flexibility, which can be especially important in cases with continuing trusts. *See id.* at 166-67.

**[6]** Here, while the majority of the claims asserted in the complaint are common state tort and contract claims involving post-confirmation conduct, the Appellees also allege that: the State breached the Plan and the Zortman Agreement; the State breached the covenant of good faith and fair dealing with respect to these agreements; and the State committed fraud in the inducement at the time it entered into the Plan and the Zortman Agreement. Among the remedies sought for these claims are disgorgement of the $1,050,000 paid to the State as part of the settlement and rescission of the Zortman Agreement. Resolution of these claims will likely require interpretation of the Zortman Agreement and the Plan. *Compare Resorts Int'l*, 372 F.3d at 170 (no post-confirmation jurisdiction over accounting malpractice action where no need "to interpret or construe the Plan or the incorporated Litigation Trust Agreement.").

Moreover, these claims — and the attendant remedies sought — could affect the implementation and execution of the Plan itself, which specifically called for the creation of RSC and the transfer of debtor money to fund it. *See Craig's Stores*, 266 F.3d at 390-91. We therefore conclude that these claims have a sufficiently "close nexus" to the bankruptcy

proceeding to uphold "related to" jurisdiction over at least these three claims.[1]

[7] The remaining claims have a much more tangential relationship to the underlying bankruptcy proceeding. Nonetheless, the bankruptcy court could properly exercise supplemental jurisdiction over these claims. Pursuant to 28 U.S.C. § 1367, district courts have "supplemental jurisdiction over all other claims that are so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." This circuit has applied § 1367 to bankruptcy claims, even when the subject matter jurisdiction is based on "related to" bankruptcy jurisdiction. *See Sec. Farms v. Int'l Bhd. of Teamsters*, 124 F.3d 999, 1008 n.5 (9th Cir. 1997). Here, the remaining claims involve a "common nucleus of operative facts" and would ordinarily be expected to be resolved in one judicial proceeding, and therefore the bankruptcy court has supplemental jurisdiction over the remaining claims. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966).[2]

---

[1] We specifically note that in reaching this decision, we are not persuaded by the Appellees' argument that jurisdiction lies because the action could conceivably increase the recovery to the creditors. As the other circuits have noted, such a rationale could endlessly stretch a bankruptcy court's jurisdiction. *See Resorts Int'l*, 372 F.3d at 170; *Craig's Stores*, 266 F.3d at 391.

[2] The Appellants also argue that the court lacks supplemental jurisdiction over Spectrum, who did not participate in the bankruptcy proceeding. However, "[s]upplemental jurisdiction extends over state claims brought against a party even when that party was not subject to the federal claim primarily at issue." *Davis v. Courington*, 177 B.R. 907, 912 (B.A.P. 9th Cir. 1995). In any event, because of our conclusion in Part II that the State has not waived its immunity with respect to the claims in the complaint, all of the claims against the State must be dismissed, and thus any basis for supplemental jurisdiction over Spectrum will also disappear.

## II. **Eleventh Amendment Immunity**

**[8]** The Eleventh Amendment precludes suits "in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." *Tenn. Student Assistance Corp. v. Hood*, 124 S. Ct. 1905, 1909 (2004). Thus, "agencies of the state are immune from private damage actions or suits for injunctive relief brought in federal court." *Dittman v. California*, 191 F.3d 1020, 1025 (9th Cir. 1999) (internal quotation marks omitted). This immunity is not absolute, however, and "a State may waive its sovereign immunity by consenting to suit." *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999). Waiver will generally exist where the State either voluntarily invokes jurisdiction or makes a clear declaration that it intends to submit itself to jurisdiction. *Id.* at 675-76.

**[9]** It is clear that a state may waive its sovereign immunity by filing a proof of claim in a bankruptcy proceeding, thus voluntarily invoking the jurisdiction of the federal courts. *See id.* at 681 n.3; *see also Gardner v. New Jersey*, 329 U.S. 565, 573 (1947) ("[H]e who invokes the aid of the bankruptcy court by offering a proof of claim and demanding its allowance must abide the consequences of that procedure."). What is less clear, and the principal issue in this case, is the extent of that waiver.

### A. *Logical Relationship*

**[10]** We first confronted the extent of a state's waiver in *In re Lazar*, 237 F.3d 967 (9th Cir. 2001). In that case, we followed a number of sister circuits to hold that by filing a proof of claim, "the state waives its Eleventh Amendment immunity with regard to the bankruptcy estate's claims *that arise from the same transaction or occurrence as the state's claim*." *Id.* at 978 (emphasis added). To determine whether a claim against the state arises out of the "same transaction or occur-

rence" as the state's proof of claim, we applied the "logical relationship" test for compulsory counterclaims:

> A logical relationship exists when the counterclaim arises from the same aggregate set of operative facts as the initial claim, in that the same operative facts serve as the basis of both claims or the aggregate core of facts upon which the claim rests activates additional legal rights otherwise dormant in the defendant.

*Id.* at 979 (quoting *In re Pinkstaff*, 974 F.2d 113, 115 (9th Cir. 1992)).

Applying this test, we concluded in *Lazar* that the bankruptcy estate's action for reimbursement from a California fund for petroleum cleanup undertaken by the debtor was logically related to the state's proof of claim for unpaid underground storage tank fees (which would have been contributed to the cleanup fund). We noted that "both concern the Fund and both arise out of activities associated with the same bankruptcy case." *Id.* at 980.

**[11]** Here, however, the basis for the State's claims was the insufficiency of the Debtors' reclamation bonds and various environmental obligations of the Debtors. Those claims do not arise from the same aggregate set of operative facts as the Appellees' claims for a post-confirmation breach of contract. *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 380 (1994) (facts underlying original dispute and those involving breach of a settlement agreement unrelated); *see also In re Creative Goldsmiths*, 119 F.3d 1140, 1149 (4th Cir. 1997) (action to avoid payment of corporate income taxes does not arise out of same transaction or occurrence as state's proof of claim for sales and withholding taxes simply because both involve taxes).

While the State's proofs of claim (seeking environmental compliance) and the settlement agreement (creating an entity

to effect compliance) obviously involve the same general subject matter, the timing of events here provides a critical distinction from cases like *Lazar*, because the Debtors could not have asserted any type of counterclaim against the State *at the time it filed its proofs of claims*. The "logical relationship" test adopted in *Lazar* was based on Federal Rule of Civil Procedure 13(a) involving *compulsory* counterclaims, and, of course, it would be hard to conclude that the Debtors in this case had a compulsory bankruptcy counterclaim regarding a company yet to be formed or an agreement yet to be made. The rationale underlying proof of claim waiver of immunity also presupposes that the state will be able to determine *ex ante* whether it will be opening itself up to a counterclaim by electing to participate in the bankruptcy estate. *See Arecibo Cmty. Health Care, Inc. v. Commonwealth of Puerto Rico*, 270 F.3d 17, 29 (1st Cir. 2001) ("As with any case of a knowing and intelligent waiver of rights, the state has the option . . . of determining whether the potential benefit from waiving its immunity will exceed the potential liability."); *see also In re Straight*, 143 F.3d 1387, 1392 (10th Cir. 1998) (holding that state waives sovereign immunity against compulsory counterclaims arising from the same transaction or occurrence as the state's proof of claim); *In re Creative Goldsmiths*, 119 F.3d at 1148 (same).

The Appellees contend that although this circuit adopted the Rule 13(a) test in *Lazar*, we extended its application beyond compulsory counterclaims in *In re Harleston*, 331 F.3d 699 (9th Cir. 2003). In *Harleston*, a California agency filed a proof of claim in the bankruptcy proceeding but failed to prosecute it. *Id.* at 701. Two years after the discharge order was entered in the bankruptcy case, the state commenced collection efforts against Harleston, who promptly filed a complaint in bankruptcy court, seeking declaratory relief that the debt had been discharged. *Id.* at 703. We determined that the state's original waiver extended to the later action, noting: "As the adversary proceeding seeks to clarify the scope of the

bankruptcy proceeding, the proceedings are logically related. The same set of operative facts underlies both." *Id.* at 703.

*Harleston* does not alter the result in this case. There, the debtor sought only declaratory relief regarding the effect of the original proof of claim, not damages or other affirmative relief. Moreover, it was the sort of action the state could have reasonably anticipated as a consequence of its original bankruptcy court filing. The facts underlying the current action against the State, however, are not "the same aggregate set of operative facts" that gave rise to the State's proofs of claims in the first place. *Lazar*, 237 F.3d at 979. Although involving the same general subject matter — reclamation at the mine sites — the relationship between the claims in the current action and the State's original claim against the Debtors is significantly more tenuous than the relationships presented in *Lazar* or *Harleston*. We recognize that courts should generally interpret Rule 13 broadly "to analyze whether the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit,"[3] but those considerations are not present here; there has already been one proceeding, in which the Debtors had no possible counterclaims against the State, and now there is a subsequent proceeding, involving newly arisen claims against the State.

B. *Active Participation*

Appellees argue that even if the district court erred by finding the "logical relationship" test was satisfied, this court could still affirm the holding based on the State's active and extensive participation in the bankruptcy cases. Appellees rely on two Ninth Circuit cases, *In re Bliemeister*, 296 F.3d 858 (9th Cir. 2002), and *In re White*, 139 F.3d 1268 (9th Cir.

---

[3] *Pochiro v. Prudential Ins. Co.*, 827 F.2d 1246, 1249 (9th Cir. 1987) (quoting *Harris v. Steinem*, 571 F.2d 119, 123 (2d Cir. 1978)).

1998), in which this court found that a sovereign's actions in the suit were incompatible with preserving immunity.

*White* and *Bliemeister*, however, do not advance the Appellees' position. *White* simply reaffirms the familiar concept that by making a claim, a sovereign waives immunity *with respect to that claim*, and holds that this waiver survives a conversion from a Chapter 11 to a Chapter 7 proceeding. 139 F.3d at 1271-73. In *Bliemeister*, the state did not file a proof of claim, but did participate in an adversary proceeding regarding dischargeability, and then claimed sovereign immunity only after an oral argument in which the bankruptcy court announced its preliminary leanings. 296 F.3d at 860. The court found that the state was improperly trying to gain a tactical advantage by raising the defense only after it expected to lose on the merits. *Id.* at 862.

Here, the State does not dispute that it has waived its immunity by filing a proof of claim. The question is whether that waiver extends to the current adversarial action. Neither *White* nor *Bliemeister* suggest that active participation with respect to a claim can waive immunity beyond the scope of that claim (or claims "logically related" to it). *See Bliemeister*, 296 F.3d at 862-63 (state waived immunity with respect to dischargeability of debt); *White*, 139 F.3d at 1273 (entity waived tribal immunity "with respect to adjudication of that claim," and conversion of proceeding from Chapter 11 to Chapter 7 did not alter *or extend scope* of the initial waiver). If aggressively pursuing a claim in bankruptcy could expand the scope of a waiver, then states would be chilled from advocating their rights within the bankruptcy proceeding. Our cases do not hold that active participation can expand the scope of the state's initial waiver, and we decline to extend those cases today.

**[12]** In sum, although the claims in the current action satisfy the "related to" test for subject matter jurisdiction, they do not arise out of the "same transaction or occurrence" as the

proofs of claims that the State filed in the underlying action, and thus the State should not be deemed to have waived its immunity with respect to the current suit. The bankruptcy court and district court erred in holding to the contrary.

## CONCLUSION

**[13]** This court has subject matter jurisdiction over this action because the Appellees' claims are "related to" the original bankruptcy action in that they involve the interpretation and implementation of the confirmed bankruptcy plan. However, the claims against the State do not arise out of the "same transaction or occurrence" as the State's original proofs of claims, and thus the State has not waived its Eleventh Amendment immunity with respect to the current adversary proceeding. The bankruptcy court must therefore dismiss all the claims against the State and Spectrum for lack of jurisdiction.[4]

AFFIRMED IN PART; REVERSED IN PART. Each party to bear its own costs on appeal.

---

[4]We express no comment on the merits of the underlying action, as we simply hold that any such action against the State must proceed in state court. We assume, as the State conceded at argument, that principles of tolling would apply to the statute of limitations in any subsequent state court action.