# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-51151

United States Court of Appeals
Fif h Circuit

**FILED**

December 12, 2016

Lyle W. Cayce
Clerk

In the Matter of:  LISA ANN GALAZ

Debtor

RAUL GALAZ,

Appellant

v.

LISA ANN GALAZ,

Appellee

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:15-CV-349

Before WIENER, CLEMENT, and COSTA, Circuit Judges.

PER CURIAM:*

Raul and Lisa Ann Galaz divorced in 2002. The divorce decree required Lisa to maintain health insurance for her and Raul's children, pay the premiums required to maintain that insurance, and pay certain medical

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

expenses not covered by insurance. Initially, Lisa complied with the divorce decree. In December 2007, however, she filed for Chapter 13 bankruptcy. And in January 2008, she ceased making payments for the children's health insurance and other medical expenses.

In 2009, Raul brought an action against Lisa in state court seeking unpaid child support expenses. The parties submitted to binding arbitration. Raul was ultimately awarded $6,727.00 "for child support arrearage" plus $3,000.00 for attorney's fees, amounting to a total award of $9,727.00. The state court entered this order (the "2009 Order") on November 17, 2009. Raul then moved for the bankruptcy court to direct payment to him from the bankruptcy estate under the 2009 Order. Lisa responded that this amount should be offset against any judgment that she might obtain in her pending adversarial proceeding against Raul. *See Galaz v. Galaz* (*In re Galaz I*), 480 F. App'x 790, 792 (5th Cir. 2012). The adversarial proceeding concerned Raul's fraudulent transfer of assets from a company—that Lisa partially owned—to Segundo Suenos, LLC, a company controlled by Raul and his father (the "Segundo proceeding"). *See Galaz v. Galaz* (*In re Galaz II*), 765 F.3d 426, 428-29 (5th Cir. 2014). The district court took the matter under advisement, and Raul later renewed his motion to direct payment. *Id.* The bankruptcy court denied the renewed motion, explaining that if Lisa was successful in her adversary claim, Raul's claim could be offset against the damages that she might recover. Raul appealed that decision to the district court and this court, both of which affirmed. *See In re Galaz I*, 480 F. App'x at 791.

On November 17, 2011, the state court entered a second order (the "2011 Order") requiring, among other things, that Lisa pay half of her daughter's future medical premiums and unreimbursed medical costs until she reached the age of majority.

No. 15-51151

Ultimately, Lisa was successful in the Segundo proceeding. The bankruptcy court awarded her $241,309.10 in actual damages and $250,000.00 in exemplary damages. *See In re Galaz II*, 765 F.3d at 429. Raul appealed. While the Segundo proceeding was being appealed, Lisa completed the terms of her Chapter 13 plan and was granted a discharge in January 2012. The district court affirmed Lisa's judgment in the Segundo proceeding. But this court vacated the bankruptcy court's judgment because the bankruptcy court did not have authority to enter a final judgment on a "non-core" bankruptcy proceeding. *In re Galaz II*, 765 F.3d at 432-34. Thus, this court remanded the Segundo proceeding so that the district court could refer the case to the bankruptcy court for proposed findings of fact and conclusions of law. *Id.* at 434. On January 23, 2015, the bankruptcy court issued its proposed findings of fact and conclusions of law in the Segundo proceeding, recommending that judgment be entered in favor of Lisa for $491,309.10. The district court adopted the bankruptcy court's proposed findings of fact and conclusions of law and entered judgment in Lisa's favor. Raul again appealed to this court. *Galaz v. Galaz* (*In re Galaz III*), No. 15-51194.[1]

On February 24, 2015, Raul moved in state court to enforce the 2009 and 2011 Orders, seeking $9,727.00 and $1,429.00, respectively. Raul alleged, among other things, that Lisa failed to make the regular medical premium payments and expense reimbursements required by the 2011 Order, which as of filing amounted to $1,429.00. In response, Lisa filed a Motion to Enforce Stay or Prior Order in the bankruptcy court. The bankruptcy court entered an order preliminarily enjoining Raul from collecting the child support obligations in the state court proceeding, finding that Lisa had a right to offset the amount owed under the 2009 and 2011 Orders against any potential judgment in Lisa's

---

[1] As of 7/20/16, briefing is still ongoing in this appeal.

No. 15-51151

favor in the Segundo proceeding. The preliminary injunction would automatically dissolve if the Segundo proceeding did not result in an award to Lisa exceeding $11,156.00, so that Raul could pursue enforcement and collection in state court. The district court affirmed the bankruptcy court's order, noting that the district court had entered judgment in favor of Lisa for $491,309.10, and therefore "Raul's judgment against Lisa in the amount of $11,156.00 may now operate as a setoff against the damages awarded to Lisa in that judgment." Raul filed this appeal, arguing that the bankruptcy court lacked subject matter jurisdiction to enjoin him from enforcing his orders and, alternatively, that the child support obligations arising from the 2009 and 2011 Orders are ineligible for setoff against the Segundo judgment.

I.

"Subject-matter jurisdiction is a question of law which we review *de novo*." *In re OCA, Inc.*, 551 F.3d 359, 366 (5th Cir. 2008). "In reviewing the rulings of the bankruptcy court, this court applies the same standards of review as applied by the district court." *In re ASARCO, LLC.*, 702 F.3d 250, 257 (5th Cir. 2012). "In conducting this review, we analyze the legal conclusions that guided the awarding court's determinations *de novo* and that court's findings of fact for clear error." *Id.* (emphasis added).

II.

Raul argues that the bankruptcy court lacked subject matter jurisdiction to enjoin him from taking action in state court on the 2009 and 2011 Orders because Lisa's bankruptcy estate had been closed for nearly three years when he filed his state court action in 2015. Alternatively, Raul argues that if the bankruptcy court had jurisdiction, offsetting the child support award is improper because Texas law does not allow offset against child support obligations and because the obligations lack mutuality. Lisa counters that the

district court had either arising under, arising in, or related to jurisdiction, and that Raul waived his offset arguments.

"Bankruptcy courts find their source of jurisdiction in 28 U.S.C. §§ 157 and 1334." *In re Baker*, 593 F. App'x 416, 417 (5th Cir. 2015) (unpublished). Section 1334(a)-(b) confers to district courts "original and exclusive jurisdiction" over "all cases under title 11" and "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." Section 157 provides for the referral of certain cases from district courts to bankruptcy courts. *In re Baker*, 593 F. App'x at 417 n.2.

Proceedings "'arising under title 11' . . . describe those proceedings that involve a cause of action created or determined by a statutory provision of title 11." *In re Wood*, 825 F.2d 90, 96 (5th Cir. 1987). "'[A]rising in' proceedings . . . [refer] to those 'administrative' matters that arise *only* in bankruptcy cases. In other words, 'arising in' proceedings are those that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy." *Id.* at 97. A matter is related to a bankruptcy proceeding if "the outcome of that proceeding could *conceivably* have any effect on the estate being administered in bankruptcy." *Id.* at 93 (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)).

To decide whether the district court had jurisdiction to enjoin Raul from enforcing his 2009 and 2011 Orders, we must decide if this dispute arises under, arises in, or relates to Lisa's bankruptcy proceeding. We address the 2009 and 2011 Orders in turn.

### A. 2009 Order

Raul's arguments that the bankruptcy court had no subject matter jurisdiction to enjoin him from seeking to enforce his 2009 Order in state court are meritless. He contends that the bankruptcy court lacked jurisdiction

because Lisa's plan had been confirmed, fully implemented, and executed by 2012. Raul maintains that "[a]fter a debtor's reorganization plan has been confirmed, the debtor's estate, and thus bankruptcy jurisdiction, ceases to exist, other than for matters pertaining to the implementation or execution of the plan." *In re Baker*, 593 F. App'x at 417 (alteration in original) (quoting *Craig's Stores of Tex., Inc. v. Bank of La.*, 266 F.3d 388, 390 (5th Cir. 2001)). According to Raul, because the estate was fully administered when he filed his state court action in 2015, this matter does not pertain to the implementation or execution of Lisa's plan, and thus the district court lacked jurisdiction to issue the injunction.

But Raul's argument ignores the fact that "a bankruptcy court plainly ha[s] jurisdiction to interpret and enforce its own prior orders." *Id.* (alteration in original) (quoting *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009)). Here, Raul previously moved for the bankruptcy court to direct payment to him for the amount owed under the 2009 Order. The bankruptcy court denied this motion, acknowledging that Raul could offset this amount against any judgment that Lisa obtained in the Segundo proceeding. The district court and this court affirmed. *See In re Galaz I*, 480 F. App'x at 791. To allow Raul to enforce his 2009 Order in state court now, outside of the proceeding where he was ordered to pursue such enforcement (*i.e.,* the Segundo proceeding), would create an end run around the bankruptcy court's previous ruling.[2] The bankruptcy court's injunction was necessary to enforce its previous order. *See In re Nat'l Ass'n of the Christian Church (Disciples of Christ)*, 333 F. App'x 822, 827 (5th Cir. 2009) (unpublished) ("A final decree closing the case after the

---

[2] Raul's contention that the original bankruptcy court order did not prevent him from enforcing the child-support obligations against non-bankruptcy assets or collecting the child support outside of the bankruptcy process is misguided. Raul is merely attempting to collaterally attack the bankruptcy court's previous order.

estate is fully administered does not deprive the court of jurisdiction to enforce or interpret its own orders." (quoting *In re 350 Encinitas Invs., LLC*, 313 F. App'x 70, 72 (9th Cir. 2009))). Even though the estate had been fully administered, the bankruptcy court had subject matter jurisdiction regarding the child support claims from the 2009 Order because it needed to enforce its previous order.[3]

Raul's arguments that Texas law does not allow offset against child support obligations and that the obligations here lack mutuality also fail. Raul did not timely raise these arguments before the bankruptcy court. *See Galaz I*, 480 F. App'x 790 at 792-94 (holding that Raul had waived his mutuality argument by failing to raise it in the bankruptcy court); *see also In re OCA, Inc.*, 552 F.3d 413, 424 (5th Cir. 2008) ("Since this issue was not properly presented to the bankruptcy court, it cannot be raised now for the first time on appeal."). Thus, the bankruptcy court did not err in enjoining Raul from enforcing his 2009 Order in state court.[4]

**B. 2011 Order**

Conversely, Raul's arguments that the bankruptcy court had no subject matter jurisdiction to enjoin him from seeking to enforce his 2011 Order in state court have merit. Raul again points out that Lisa's bankruptcy case closed when she was granted a discharge in January 2012. But here, he argues

---

[3] Cabining this exercise of jurisdiction under § 1334(b)'s arising under, arising in, or related to framework is not without its challenges. Nevertheless, this exercise of jurisdiction falls within the "arising in" framework because this issue would not have arisen absent Lisa's bankruptcy case. *See Lothian Cassidy, LLC v. Lothian Expl. & Dev. II, L.P.*, 487 B.R. 158, 162 (S.D.N.Y. 2013) ("'Arising in' claims may include [m]atters involving the enforcement or construction of a bankruptcy court order . . . ." (internal quotation marks omitted)).

[4] Raul contends that both the bankruptcy court and the district court failed to apply the $9,727.00 offset to the judgment obtained by Lisa against him in the Segundo proceeding. He contends that this obligation still exists. Lisa counters that Raul chose not to assert his claim to offset. Because this panel will not decide the merits of *In re Galaz III*, No. 15-51194, we defer to that panel to decide the issue.

that because the bankruptcy court never previously considered the 2011 Order, it had no jurisdiction to enjoin him from enforcing this order in state court.

Again, we must determine whether the bankruptcy court's action falls within arising under, arising in, or related to jurisdiction. Because this action by the bankruptcy court was not "created or determined by a statutory provision of title 11," it does not fall within arising under jurisdiction. *In re Wood*, 825 F.2d at 96. Likewise, arising in jurisdiction is inapplicable here because, unlike the 2009 Order, the bankruptcy court has no prior order to enforce with respect to the 2011 Order. Thus, the bankruptcy court cannot rely on its authority to enforce its prior order to exercise jurisdiction. Similarly, related to jurisdiction is inapplicable.

As explained above, a matter is related to a bankruptcy proceeding when "the outcome of that proceeding could *conceivably* have any effect on the estate being administered in bankruptcy." *Id.* (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)). After confirmation of the bankruptcy plan, however, this circuit has adopted a "more exacting theory of post-confirmation bankruptcy jurisdiction." *In re Craig's Stores of Tex., Inc.*, 266 F.3d 388, 391 (5th Cir. 2001). "After a debtor's reorganization plan has been confirmed, the debtor's estate, and thus bankruptcy jurisdiction, cease to exist, other than for matters pertaining to the implementation or execution of the plan." *Id.* at 390. Here, the child support obligations under the 2011 Order began to accrue in December 2011 and each month thereafter. Lisa's bankruptcy plan was confirmed in 2008, and the bankruptcy case was closed in 2012. Clearly, the obligations under the 2011 Order, nearly all of which arose after her bankruptcy case was closed, did not pertain to the implementation or execution of her bankruptcy plan. Even if we applied the less exacting pre-conformation approach to related to jurisdiction, whether Raul is successful in proving that

8

Lisa owes him money under the 2011 Order would have no conceivable effect on Lisa's bankruptcy estate.

Thus, the district court lacked jurisdiction to enjoin Raul from seeking to enforce Lisa's obligations under the 2011 Order.

## III.

For the foregoing reasons, we AFFIRM in part, REVERSE in part, and REMAND to the district court.